IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD PIAZZA, | : | CIVIL ACTION NO. **3:CV-09-1087** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| CT CORPORATION, t/d/b/a Mohegan | : | |
| Sun at Pocono Downs and | : | |
| PENNSYLVANIA STATE POLICE | : | |
| TROOPER CURT A. SZCZECINSKI, | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On June 8, 2009, Plaintiff, Richard Piazza filed, through counsel, a civil rights Complaint pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff also asserted state law tort claims. Plaintiff originally named as Defendants CT Corporation, t/d/b/a Mohegan Sun at Pocono Downs, and the Pennsylvania State Police, Division of Gaming Enforcement ("PSP"). Defendant PSP filed a Motion to Dismiss Plaintiff's original Complaint on July 30, 2009. (Doc. 5). Defendant CT Corporation filed a Motion to Dismiss Plaintiff's original Complaint on August 18, 2009. (Doc. 11). Plaintiff then filed an Amended Complaint on August 31, 2009. (Doc. 8). As Defendants in his amended pleading, Plaintiff named CT Corporation, t/d/b/a Mohegan Sun at Pocono Downs, PSP, PSP Trooper Curt A. Szczecinski, and Trooper John Does, Numbers One and Two. The three individual Trooper Defendants were all alleged to have been assigned to the PSP Division of Gaming Enforcement. Plaintiff sued Defendants Trooper Szczecinski and Trooper John Does, Numbers One and Two, in both their official and individual capacities. (*Id.*, pp. 2-3).

In response to Plaintiff's Amended Complaint, Defendant CT Corporation filed an Answer with Affirmative Defenses on September 22, 2009.  (Doc 10).  Defendants PSP, Szczecinski, and Trooper John Does Numbers One and Two ("Commonwealth Defendants"), jointly filed a Motion to Dismiss Plaintiff's Amended Complaint on September 24, 2009, pursuant to Fed. R. Civ. P. 12(b)(1), (4), (5) and (6).  (Doc. 11).

On February 3, 2010, we issued a Report and Recommendation ("R&R") and recommended that Commonwealth Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 11) be granted as to all claims against them (including Plaintiff's conspiracy claims) except for Plaintiff's Fourth Amendment illegal search and seizure claim (Count One) and his § 1983 malicious prosecution claim (Count Three) against Defendant Trooper Szczecinski in his individual capacity. We also recommended that this case be remanded to the undersigned for further proceedings with respect to Defendant CT Corporation, t/d/b/a Mohegan Sun, and Defendant Trooper Szczecinski. (Doc. 15).

On February 26, 2010, the Court issued an Order and adopted our R&R.  (Doc. 16). After remand, we then directed Defendant Trooper Szczecinski to file his Answer to Plaintiff's Amended Complaint.  (Doc. 17).  On March 9, 2010,  Defendant Trooper Szczecinski  filed his Answer to Plaintiff's Amended Complaint.  (Doc. 19).

We held a joint case management conference with Plaintiff and the two remaining Defendants, Trooper Szczecinski and CT Corporation.  (Doc. 22).

Following the close of discovery, on November 22, 2010, Defendant Trooper Szczecinski filed a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56.  (Doc. 32).[1]

On December 15, 2010, Plaintiff filed his own Motion for Partial Summary Judgment. **(Doc. 40).**  Plaintiff sought judgment as a matter of law with respect to his remaining claims against Defendant Trooper Szczecinski (*i.e.* his malicious prosecution claim and his Fourth Amendment illegal search and seizure claim)[2] and his negligence claim against Defendant CT Corporation.[3] Plaintiff also filed his wife's (Marianne Piazza) Affidavit and his Affidavit.  (Docs. 41 and 42; Doc. 46, Exs. B and C).  Further, Plaintiff filed his support brief and his SMF.  (Docs. 43 and 44). Additionally, Plaintiff filed exhibits.  (Doc. 46).  On January 6, 2011, Defendant Trooper Szczecinski filed his answer to Plaintiff's SMF with attached exhibits and his opposition brief to Plaintiff's Summary Judgment Motion.  (Docs. 54 and 55).  On January 10, 2011, Defendant CT Corporation filed its opposition brief to Plaintiff 's Motion for Summary Judgment and its response to Plaintiff's SMF with an attached exhibit.  (Docs. 58 and 59).  On January 21, 2011, Plaintiff filed his reply brief.  (Doc. 65).

---

1.   By separate R&R, we made our recommendations with respect to Defendant Trooper Szczecinski's Summary Judgment Motion and Plaintiff's cross Summary Judgment Motion as against Trooper Szczecinski.  (Doc. 78).

2.   At the February 8, 2011 oral argument we held, Plaintiff withdrew his §1983 malicious prosecution claim against Defendant Trooper Szczecinski.  Also, we determined that the Court had previously dismissed Plaintiff 's conspiracy claims against the Commonwealth Defendants, including Trooper Szczecinski.

3.   As discussed below, we find that the only remaining state law claim against Defendant CT Corporation, Count Nine, is Plaintiff's negligence claim.

Also, on December 15, 2010, Defendant CT Corporation filed its Motion for Summary Judgment. **(Doc. 45).**[4]  Defendant CT Corporation simultaneously filed its support brief and SMF with attached exhibits. (Docs. 47 and 48).  Plaintiff filed his brief in opposition to Defendant CT Corporation's Summary Judgment Motion on January 5, 2011.  (Doc. 50).   On January 19, 2011, Defendant CT Corporation filed its reply brief in support of its Summary Judgment Motion.  (Doc. 63).

The Motions for Summary Judgment of Plaintiff and Defendant CT Corporation are ripe for disposition. **(Docs. 40 and 45).**[5]  The parties filed several other motions related to the pending dispositive motions, namely Docs. 52, 56, 60, 62 and 69.

On February 8, 2011, we held oral argument, on the record, regarding the three Summary Judgment Motions and the related motions.   Prior to oral argument, Plaintiff withdrew his Docs. 62 and 69 Motions.  (Doc. 74).

Thus, of the related motions which are relevant to this R&R, only Doc. 60 remains, namely, Defendant CT Corporation's Motion to Strike certain paragraphs of Plaintiff's SMF and certain exhibits submitted by Plaintiff.

In this R&R, we consider the pending motions of Motions for Summary Judgment of Plaintiff and Defendant CT Corporation which are ripe for disposition. (**Docs. 40 ad 45)**.  We shall also consider Defendant CT Corporation's **Doc. 60** Motion to Strike.

---

4.   Defendant Trooper Szczecinski concurred in Defendant CT Corporation's Motion for Summary.  (Doc. 45, p. 4).

5.   The undersigned has been assigned this case for pre-trial maters pursuant to 28 U.S.C. § 636(b)(i)(A).

4

The Court can exercise supplemental jurisdiction over Plaintiff's pendent state law negligence claim against Defendant CT Corporation under 28 U.S.C. §1367.[6]

## II. Motion for Summary Judgment Standard.

In *Allen v. Fletcher*, 2009 WL 1542767, *2 (M.D. Pa.), the Court outlined the applicable standard to apply when considering a summary judgment motion as follows:

> Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

> Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2D § 2727 (2d ed.1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to

---

6.  If the Court does not adopt our April 4, 2011 R&R (Doc. 78), and finds that Plaintiff has not established a federal claim against Defendant Trooper Szczecinski under §1983, we recommend that the Court decline to exercise pendent jurisdiction over Plaintiff's state law claim against Defendant CT Corporation. *See Verdecchia v. Prozan,* 274 F.Supp.2d 712, 728 (W.D. Pa. 2003); *Grimm v. City of Uniontown,* 2008 WL 282344, *32 (W.D. Pa. 1-31-08).  As noted, on April 4, 2011, we issued a separate R&R regarding the cross Summary Judgment Motions of Defendant Trooper Szczecinski and Plaintiff.

make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson,* 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

"Material facts" are those which might affect the outcome of the suit. *Justofin v. Metropolitan Life Ins. Co.,* 372 F.3d 517, 521 (3d Cir. 2004).

## III. Allegations of Amended Complaint.

In his Amended Complaint, Plaintiff avers that, while he was playing a slot machine at the Mohegan Sun Casino on September 22, 2007, he found an envelope containing gaming vouchers on the floor. Plaintiff avers that he did not know who dropped the envelope. Plaintiff states that he tried to locate Casino personnel in order to help him find the owner of the envelope, but to no avail. Plaintiff alleges that when he resumed playing a slot machine, he was confronted by former Defendant John Doe Troopers and escorted to the Casino Security Office. Plaintiff avers that he was interrogated by Casino personnel and accused of stealing the gaming vouchers, and that

the John Doe Troopers and Casino personnel held him in their custody for about one and a half hours.

Plaintiff states that a PSP Gaming Officer accused him of stealing the envelope and told him he was being arrested.  Plaintiff avers that Defendant Trooper Szczecinski then fingerprinted him and took his mug shot photo.  Plaintiff then alleges that Defendant Trooper Szczecinski filed criminal charges against him, and that following a hearing before a District Justice at the Luzerne County Courthouse, all of the charges were dismissed.

Plaintiff asserted claims (Counts One, Two and Three) under 42 U.S.C. § 1983 against all Commonwealth Defendants.  In Count One, Plaintiff alleged that his September 22, 2007 seizure and arrest by the Commonwealth Defendants at the Mohegan Sun Casino was without probable cause.  Plaintiff alleged that he was arrested and seized in violation of the Fourth Amendment, and that this conduct deprived him of his due process rights under the Fourteenth Amendment. (Doc. 8, pp. 8-9).

In Count Two, Plaintiff raised a claim that Commonwealth Defendants conspired with Defendant Mohegan Sun to violate his rights under the Fourth Amendment and Fourteenth Amendment. (*Id.*, pp. 9-10).

In Count Three, Plaintiff raised a § 1983 malicious prosecution claim against Commonwealth Defendants, and he alleged that they initiated criminal proceedings against him without probable cause and with malice or for a purpose other than to bring him to justice. (*Id.*, pp. 10-11). Plaintiff stated that the criminal proceedings terminated in his favor.

In Count Four, Plaintiff raised a state law abuse of process claim against Commonwealth Defendants, and he alleged that these Defendants used the criminal legal process against him in a manner "to accomplish a purpose for which it was not designed."  (*Id.*, p. 11).

In Count Five, Plaintiff asserted a state law Intentional Infliction of Emotional Distress ("IIED") claim against Commonwealth Defendants, and he alleges that these Defendants, "by their extreme and outrageous conduct, intentionally or recklessly caused [him] to suffer severe emotional distress." (*Id.*, p. 12).

In Count Six, Plaintiff raised a municipal liability claim under § 1983 against Defendant PSP, and he alleges that "the policies and customs of Defendant Pennsylvania Gaming Enforcement ... were in violation of the Fourth Amendment and Fourteenth Amendment."  (*Id.*, pp. 12-13).

In Count Seven, Plaintiff raised a state law false imprisonment claim against all Defendants, and he alleged that Defendants unlawfully detained and restrained him on September 22, 2007, without probable cause, in a small room at Mohegan Sun Casino for about one and a half hours.  (*Id.*, pp. 9-10).

In his final count, Count Nine[7], Plaintiff raised a negligence claim against only Defendant CT Corporation, *i.e.* Mohegan Sun.  (*Id.*, pp. 14-15).  Specifically, in Count Nine, Plaintiff alleged as follows:

---

[7]**.**   Plaintiff erroneously skipped Count Eight in his Amended Complaint.

At all relevant times security personnel of Mohegan Sun breached their duty to the Plaintiff.

The negligence of Mohegan Send consisted of the following:

(a)     failing to properly train its employees and the employees of contractors acting under the direction and control of Mohegan Sun with respect to investigation of claims of improper conduct by patrons of Mohegan Sun;

(b)     failing to properly train its employees and/or employees of contractors acting under the direct and control of Mohegan Sun with respect to physical handling of patrons;

(c)     failing to properly supervise its employees and/or employees of contractors acting under the direction and control of Mohegan Sun with respect to their actions against patrons of Mohegan Sun;

(d)     failing to properly investigate the backgrounds of its employees and/or employees of contractors acting under the direction and control of mohegan Sun when hiring those individuals to protect against harmful conduct towards patrons of Mohegan Sun; and

(e) failing to maintain safe premise.

As a result of the aforesaid, Richard Piazza has suffered great suffering and mental anguish and may continue to endure same for an indefinite time in the future to his great detriment and loss.

(Doc. 8, pp. 14-15, ¶'s 63.-65.).

As relief, Plaintiff sought compensatory and punitive damages as well as attorney's fees under 42 U.S.C. §1988.

Plaintiff correctly recognized (Doc. 8, pp. 3-4) that jurisdiction of this Court with respect to his federal claims is pursuant to 28 U.S.C. § 1331, § 1343(a), and he sought to invoke the Court's supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367.[8]

---

8.  As discussed below, the only remaining state law claim is Plaintiff's  negligence claim against Defendant CT Corporation, Count Nine.

As stated, on February 26, 2010, the Court granted the Commonwealth Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 11) as to all claims against them except for Plaintiff's Fourth Amendment illegal search and seizure claim (Count One) and his § 1983 malicious prosecution claim (Count Three) against Defendant Trooper Szczecinski in his individual capacity. We also find that only Plaintiff's negligence claim (Count Nine) against Defendant CT Corporation, *i.e.* Mohegan Sun, remains.

Moreover, during the February 8, 2011 oral argument, Plaintiff withdrew, on the record, his § 1983 malicious prosecution claim (Count Three) against Defendant Trooper Szczecinski.  At oral argument, we also decided one of the nondispositive motions.  Specifically, we denied Defendant Trooper Szczecinski's Doc. 56 Motion as moot since we found that any conspiracy claim Plaintiff raised against Defendant Trooper Szczecinski (Count Two) was dismissed by the Court in its  February 26, 2010 Order and its adoption of our February 3, 2010 R&R.  Thus, only Plaintiff's Fourth Amendment illegal search and seizure claim (Count One) against Defendant Trooper Szczecinski remains as well as Plaintiff's negligence claim against Defendant CT Corporation, *i.e.* Mohegan Sun.[9]

---

9.   At the February 8, 2011 oral argument, Plaintiff argued that both a conspiracy claim and his negligence claim against Defendant CT Corporation remained in this case.   However, we agree with Defendant CT Corporation that since the Court previously dismissed Plaintiff's conspiracy claim against all of the Commonwealth Defendants, including Defendant Trooper Szczecinsk, no such claim could remain solely against Defendant CT Corporation.  *See Sarteschi v. Pennsylvania,* 2007 WL 1217858, *5 (M.D. Pa. 4-24-07)("a §1985(3) claim can be based on a conspiracy among officers of a single entity but can not be based on a conspiracy among the entity and its officers unless the officers acted in a personal capacity or unless independent third parties are alleged to have joined the conspiracy.")(citations omitted).   We do not find that Plaintiff asserted a conspiracy claim in his Amended Complaint based on a conspiracy among officers of Defendant CT Corporation or based on an allegation that Defendant CT Corporation conspired with its officers

We have addressed the cross Summary Judgment Motions of Defendant Trooper Szczecinski and Plaintiff, regarding Defendant Trooper Szczecinski, in a separate R&R.  (Doc. 78). Accordingly, in the present R&R, we will only discuss the SMF and exhibits of the parties which pertain to Plaintiff's  negligence claim against Defendant CT Corporation.   Also, any SMF of any party which is not supported by citation to the record and any denial of another party's SMF *sans* citation to the record  will not be considered pursuant to Local Rule 56.1, M.D. Pa.  *See Hodge v. United States*, 2009 WL 2843332 (M.D. Pa.)(the Court indicated that a SMF properly citing to evidence in the record and a response thereto were required by LR 56.1.**).**

Thus, insofar as Defendant CT Corporation's Doc. 60 Motion to Strike seeks to strike certain paragraphs of Plaintiff's Doc. 44 SMF that are not supported by citation to the record, we will recommend that it be granted under Local Rule 56.1, M.D. Pa. Since CT Corporation's  Motion to Strike (Doc. 61, p. 2), states the paragraphs  in Plaintiff's SMF which are not supported, we do not repeat them herein.  We also agree with Defendant CT Corporation that certain paragraphs of Plaintiff 's SMF do not pertain to material facts with respect to the issue as against it,  *i.e.* whether the conduct of CT Corporation's employees on September 22, 2007, breached a duty of care CT Corporation owed to Plaintiff as its customer and whether the breach proximately caused damages to Plaintiff.  Since Defendant CT Corporation's Motion to Strike (Doc. 61, pp. 2-3), states the

---

who were acting in a personal capacity.  (Doc. 8, Count Two).  In fact, Plaintiff did not name any officers of Defendant CT Corporation as Defendants in his Amended Complaint.  Nor can Plaintiff now argue that independent third parties, *i.e.* the Commonwealth Defendants, joined the conspiracy since the Court previously dismissed the conspiracy claims against these Defendants. Thus, the intracorporate conspiracy doctrine applies in this case.

In any event, as discussed below, we find no evidence to support a conspiracy claim against Defendant CT Corporation.

paragraphs in Plaintiff's SMF which are not relevant and material to the negligence claim against it, we do not repeat them herein.

Additionally, we agree with Defendant CT Corporation that Plaintiff's Exhibits F & G (Doc. 46) dealing with a sign and a voucher of Mount Airy Casino are not relevant to Plaintiff's negligence claim against it.[10]

With respect to the Motion to Strike of CT Corporation regarding the Affidavits of Plaintiff and his wife as well as the split screen DVD, Docs. 46, Exs. B, C and Y, based on our discussion in our R&R dealing with the cross summary judgment motions of Defendant Trooper Szczecinski and Plaintiff (Doc. 78), we will recommend that the Motion be denied.  As discussed in our prior R&R, we find that averments of Plaintiff and his wife in their Affidavits are sufficiently based on their personal knowledge and that they could testify to their averments at trial.  Further, we do not find the split screen DVD to be immaterial.

Therefore, we will recommend that CT Corporation's Doc. 60 Motion to Strike be granted, in part,  and denied, in part, to the extent stated above.

## IV.  Material Facts.

We consider the material facts only with respect to Plaintiff's negligence claim against Defendant CT Corporation.  (Docs. 44 and 48).  Since we have thoroughly detailed many of the material facts regarding this case in our R&R dealing with the cross Motions for Summary Judgment of Defendant Trooper Szczecinski and Plaintiff (Doc. 78), we limit our discussion in the present

---

10.   Defendant CT corporation does not own Mount Airy Casino.  Also, Mount Airy Casino is not a party in this action.

R&R only to the material facts which pertain to Plaintiff's negligence claim against Defendant CT Corporation.  Also, as Defendant CT Corporation notes in its SMF, it has labeled its exhibits to correspond to the exhibits of Defendant Trooper Szczecinski with the exception of its Exs. 8 and 9, deposition transcripts of Dennis Driscoll and Kenneth Matthews.   (Doc. 48, p. 1, n. 1). Defendant CT Corporation's Exs. 8 and 9 are attached to its SMF, Doc. 48.  Moreover, most of Defendant CT Corporation's SMF (Doc. 48) are very similar to Defendant Trooper Szczecinski's SMF (Doc. 33).  In particular, we find that ¶'s 1.-26. of Defendant CT Corporation's SMF (Doc. 48) are adequately covered in our R&R pertaining to Defendant Trooper Szczecinski's Summary Judgment Motion.  (Doc. 78).

We find the following SMF and responses (Docs. 44 and 48) of Plaintiff and Defendant CT Corporation are relevant to Plaintiff's negligence claim against it and that these SMF are supported by citation to the record:

27.   (Doc. 48) Defendant Trooper Szczecinski and one other unidentified (John Doe) PSP trooper approached Plaintiff on the Casino floor and the John Doe trooper asked Plaintiff if he found an envelope on the floor, and Plaintiff said yes.  Defendant Trooper Szczecinski then asked Plaintiff if he still had the vouchers, and Plaintiff said yes.  (Doc. 46, Ex. A, NT 76, 112-113).

Plaintiff stated that he thinks there was also a security officer of Mohegan Sun in the area as well as the female employee of Mohegan Sun he was speaking with at the time.

Many of Defendant CT Corporation's SMF are based on Plaintiff's own deposition testimony regarding the involvement of its employees, ¶'s 29.-36. and ¶ 43.  (Doc. 48).  We find it more compelling to quote from the relevant transcript pages of Plaintiff's deposition.

Specifically, Plaintiff testified as follows:

- do you recall seeing anything that identified it as a Pennsylvania State Police Office?

A       No, sir,

Q       Do you recall seeing any desks or equipment?

A       No, sir.

Q       What do you recall about what was inside that room?

A       I was upset, sir.  I was nervous.  You know, I wasn't thinking about rooms.

Q       I didn't ask you if you were upset or anything.  I'm just trying to understand for

the record what your best recollection is.  Do you have any recollection of what

was inside that room?

A       No, sir.

Q       The Pennsylvania State Police information we've been given indicated that that

room was a Pennsylvania State Police station and that's my representation to you.

My question is do you have any knowledge or information to dispute that that

in fact was a room controlled by the Pennsylvania state Police?

BY ATTORNEY COLEMAN:       Note my objections to the form.  You can answer, Rich.

A       No, I don't know, sir.

Q       Do you have any information or knowledge?

A       No, sir.

Q     For the entire time that you were inside that room, did you have contact with anyone other than the two Pennsylvania State Police Officers that we've been talking about?

A     No, they wouldn't let me, sir.

Q     I didn't ask you whether they let you.  To be clear, it's yes or no and then you can explain it.  My question is yes or no.

A     No, sir.  But my wife did.

Q     Mr.  Piazza, just so I'm clear, in the Amended Complaint your wife is not a plaintiff in this case, is she?

A     No, but you're asking me was anybody in contact with Mohegan Sun employees and I'm telling you I wasn't but she was.

Q     I think you answered the question, but let me ask it again.  Your wife is not a plaintiff in this case, is she?

A     No.

Q     And my question was whether at the time that you were in the room did you have contact with anyone other than the two Pennsylvania state troopers that we've been speaking of?

A     Did I?  No, sir.

Q     During your testimony, you then described leaving the room.  I just want to be clear.  From the time you left the room until the time that you departed the

casino, was the Pennsylvania state trooper that you've identified as John Doe, was he with you at all times through that period?

A     From the time they took me, sir?

Q     I'll say it again.  You were in the room for a period of time.

A     Yes.

Q     From the time you left the room until the time that you left the casino, was that Pennsylvania state trooper that you've been speaking of as John Doe, was he with you the entire time?

A     Yes.

Q     And as far as you were concerned, having been there, from the time you left that room until the time that he left the casino, was that Pennsylvania state trooper in control of the situation?

BY ATTORNEY COLEMAN:     Note my objection to form.  You can answer.

A     No, sir.

Q     At what point in time -

A     When we got downstairs.

Q     Tell me from the time you left the room until the time you left the casino, we established he was with you the entire time, correct?

A     Yes, sir.

Q     Tell me at what point in time he [Pennsylvania state trooper] was not in control of the situation.

16

A     When we got downstairs.

Q     Describe that for me.

A     Well, then I knew because there's people around.  Then I knew that I first and
      foremost wasn't in danger so then I felt that I could breathe.   Immediately we
      went to get a drink.  I think I went through this, sir.  And cashed out a voucher.

Q     Right.

A     And he [Pennsylvania state trooper] proceeded to walk me going toward the
      door.

Q     Right.

A     But as soon as I saw Mohegan Sun employees like Mark, the manager, beeline
      right to them.  I had no regards for the Pennsylvania state trooper at that time
      because Mohegan Sun is what I wanted to connect with, not someone that there
      was no - how could I put it - couldn't get a sixteenth of an inch with.  Do you
      understand, sir?  My goal was to get a Mohegan Sun managers and security
      immediately.  Immediately.  That's what my mind state was to people that knew
      me and people that - do you understand?

Q     I think so.

A     So then at that exact moment he [Pennsylvania state trooper] lost control because
      then he was approached by my wife and they got into it.  That's when I talked
      to the manager Mark.  That's when - it was an intense - a very, very intense

fifteen minutes, sir.  There was actually screaming going on.  If you're asking me was the Pennsylvania state trooper in control, I'm blatantly telling you no.

Q    Why not?  Why wasn't he in control?

A    Well, because he was - he was talking to my wife.  I was trying to get my point across with Mark, the manager.

Q    When you left the room with the state trooper, was it your understanding that he was escorting you to leave the facility?

A    No, sir.  I thought we were going to go get my wife, which that wasn't his intent.  He [Pennsylvania state trooper] was taking me out.

Q    Well, then at some point after leaving the room, was it clear to you that he [Pennsylvania state trooper] was escorting you out of the facility?

A    I would think so, yeah.

Q    And from that standpoint, tell me everything you recall about your conversation with Mark.

A    Well, maybe not word for word I remember, but I remember what happened here, what is - and there was something that he said, something about Sky.  He means that's Mohegan Sun Security.  That's Sky.  That is not the Pennsylvania State Police.  That is what he was trying to get across to me, something with, you know.  Then he [Mark] more or less told me it was out of his hands.  He couldn't - and I was trying to explain to him.  This was in the middle of the aisle.  I never say, you know, where - and it was going on and on and then the Pennsylvania

18

state trooper was screaming, "I heard enough. You're evicted." That's when the security of Mohegan Sun, someone I never saw before, a bald headed gentleman, came up to me and told me you are out, you know.

Q      So if I understand the sequence of events, in your conversation with Mark, did he express to you that he did not have any ability to be involved in the situation?

A      More or less sort of, yea.

Q      And did you dispute that with him in any way?

A      Well, I wanted to know where - in other words, where is the Mohegan Sun allow that to happen because that's what I was trying to get across to them.

(Doc. 46, Ex. A, NT 135-140).

Plaintiff also testified:

Q      What, if any, knowledge or information do you have that an employee of Mohegan Sun detained you on September 22, 2007?

A      I'm confused, sir. Are you asking me that night what did I know or what do I know now?

Q      What knowledge or information do you have as you sit here today that Mohegan Sun or anyone associated with Mohegan Sun detained you on September 22, 2007?

A      Do you want me to guess what I think it is because I'm not an expert.

BY ATTORNEY COLEMAN:      Don't guess. Just answer the question if you know. That was the instruction you were given earlier. Don't guess.

19

A      Could they have?  Yes.

Q      Could they have.  I'm asking did they do anything to detain you on September

       22, 2007?

A      What do I feel?

Q      No, what do you know.  What knowledge or information do you have?

A      Well, not knowledge, what I think it is in their security is the one - in other

       words, the Pennsylvania State Police just didn't approach me.  Mohegan Sun

       security is the one that informed them.  That's what - is that what you're asking

       me?  In other words, the Pennsylvania State Police didn't look at videos.  They're

       very confused.  Are you asking me could they have approached me?  Yes.

Q      I'm asking how were you detained.   Tell me how you were detained on

       September 22, 2007.

A      How do you think I was detained?

Q      How were you detained?

A      What do I think happened?  Is that what you're asking?

Q      No, I'm asking how - you said - you wrote in your Complaint, your Amended

       Complaint - I'm not using the words.  I'm not making the words up.  I'm asking

       you.  Were you detained on September 22, 2007?

A      Yes.

Q      How were you detained, in what way?

A      I was taken.

Q       And what, if anything, did Mohegan Sun do to detain you?

A       They're the ones that told the state police.  That's what I think.  I'm not a hundred percent certain, sir.  It's their security that got the state police.  That's what I think.  I'm just confused at what you're asking me.

Q       What, if any, knowledge or information do you have that Mohegan Sun interrogated you in any on September 22, 2007?

A       What do I think, sir?  Is that what you're trying to ask me?  What I think happened is Mohegan Sun security, Sky, got the state police.  That's what I think happened.

Q       And what, if anything, does that have to do with your being detained?

A       Everything because they could have approached me and handled it.  Is that what you're -

Q       Who approached you about this incident on September 22, 2007?

A       The state police.

Q       Did Mohegan Sun or anyone associated with Mohegan Sun approach you on September 22, 2007?

A       No, but are you asking me could they have?

Q       I'm asking whether they did or did not.

A       No, sir.

Q       And after approaching you on September 22, 2007, the state police, did the state police detain you?

A        Yes, sir.

Q        On September, 2, 2007, did Mohegan Sun detain you?

A        Are you asking me what I think that night or now?

Q        I'm asking factually on September 22, 2007, whether or not Mohegan Sun did

         or did not detain you that day.

A        That night I would say, yes, the state police.  Knowing now, now I know it was

         not the state police.  It was Mohegan Sun.

Q        What factual information or knowledge do you have the Mohegan Sun detained

         you on September 22, 2007?

A        Well, sir, once again I'm going to say I don't think the Pennsylvania State Police,

         they're not Sky.  They're not Mohegan Sun security.

Q        Mr.  Piazza, I'm not asking you to speculate what Mohegan Sun may or may not

         have done differently on September 22, 2007, because candidly, that is

         completely irrelevant to this case.  But that aside, I'm here to ask you factually

         what knowledge or information you have.  You said in the -

A        I don't know, sir.

Q        Listen to the question.  You have said in your Complaint that Mohegan Sun

         detained you on September, 22, 2007.  I'm asking clearly and concisely what

         factual information you have that Mohegan Sun detained you on September,

         220, 2007.

BY ATTORNEY COLEMAN:       Just let me interpose an objection, not a speaking

22

objection.  Counsel has been questioning Mr. Piazza now regarding Count 7 that's titled Richard Piazza vs. All defendants false imprisonment.  The question concerns paragraph fifty-eight.  I think reference was made in fifty-seven earlier.  It has to do with both Defendant, PSP and Mohegan Sun.  Having put that on the record, that's all.

BY ATTORNEY JOEL:          Let me put on the record that at least as to PSP, that claim has been dismissed.  The only ones that are remaining against PSP are Count 1 and the malicious prosecution claim.  Everything else has been dismissed.

BY ATTORNEY COLEMAN:      No question.  We'll stipulate to that.  I'm just saying the questioning of this witness, but I've spoken my piece.

Q       In paragraph fifty-eight it's written that Mohegan Sun detained you on September 22, 2007, and I'm asking what facts, what information do you have that Mohegan Sun - Mohegan Sun -

A       I don't know, sir.

Q       Do you have any knowledge or information?

A       I don't know, sir.

Q       Now on September 22, 2007, did Mohegan Sun restrain you?

A       Restrain me?

Q       Yes.

A       Do you mean hold me.

Q       I don't know.  Look at paragraph sixty.  Read that to yourself and it reads that

        Mohegan Sun did knowingly restrain Richard Piazza unlawfully as to interfere

        substantially with his liberty.

BY ATTORNEY COLEMAN:       Actually it doesn't.  It reads the employees of the

Defendants and/or employees of one or more of the companies acting at the direction

and control of Mohegan Sun did knowingly restrain Richard Piazza.  So, Richard, take

two seconds and read paragraph sixty as it's written and then respond to counsel's

question.

BY ATTORNEY SCHAUB:       And I'm going to put on the record I asked him to read

it to himself and I'm summarizing it.

BY ATTORNEY COLEMAN:       Okay.  Very good.

BY ATTORNEY SCHAUB:       So if you want to object to the form, go ahead.  He can

read it as often as he wants, whenever he wants and I will not constrain him.

BY ATTORNEY COLEMAN:       Okay.  Very good.

A       Yes, sir, they did.

Q       Tell me all the facts and information that you have that anyone associated with

        Mohegan Sun knowingly restrained you unlawfully.

A       Are you asking me what I knew that night, sir, or today what I know?

Q       Right now what facts or information do you have that Mohegan Sun knowingly

        restrained you?

24

A       Well, I would think it would be Mohegan Sun security that would call the state

        police, sir.   I've only said this now four times.  They're the - state police is not

        Sky.  That's what I know today.  I don't know that night, what you know - I don't

        know what you're asking me.  Yes.  Yes.  The answer is yes.

Q       Tell me what facts and information you have.

A       Mohegan Sun is the one that - they're the - they're the one with the video.

Q       And what happened with the video?

A        I don't' know, but how did the state police come to me.  I don't - I mean...

Q       Do you have any other information or facts other than what you've just given us?

A       No, sir.

Q       Okay.  Now who brought the criminal charges against you?

A        The Pennsylvania State Police.

Q       What knowledge or information do yo have that Mohegan Sun is any way

        participated with bringing criminal charges against you?

A       I don't know, sir.

(Doc. 46, Ex. A, NT 146-153).

        Additionally, Dennis Driscoll, Director of Security & Transportation for Mohegan Sun,

testified as follows:

Q.      Mr.  Driscoll, if someone finds a discarded voucher on the casino floor what

        criteria determines whether criminal charges should be filed?

A.      That would be left up to the State Police to determine that.

25

Q.      Let me try it a different way.  If someone finds a discarded casino voucher on the casino floor who notifies the State Police?

A.      The Security Department would.

Q.      Is every discarded piece of paper on the casino floor that's picked up does that trigger a notification to the State Police?

A.      Not every piece of paper.

Q.      What criteria determines what prompts a call to the State Police versus what doesn't?

A.      If we have reason to believe that the piece of paper in question is believe to be a voucher or of some significance, some importance, that requires an investigation and we would notify the State Police.

Q.      In looking at the Exhibit 1-C or actually in looking at all three Exhibits 1, that being 1-A, 1-B, and 1-C, can you determine from that exhibit as to who made the determination to contact the State Police?

                  MR. SCHAUB: I object to the form

BY MR. COLEMAN:

Q.      You can answer, sir.

A       So the question is, if I can ask is: Does the report reflect who made the actual notification?

Q.      Yes.

A.      The report, no, does not.

> Q.    Am I correct that your department works closely with the State Police that are assigned to the casino.  Correct?
>
> A.    Yes.
>
> Q.    Now, you told us about the list and I have quotes around the word "the list" that you were provided by either the State Police or the Gaming Board.  The Gaming Board provided you written regulations or the list.
>
> Have the State Police issued to you any other memorandum or any other criteria that aides your department in determining when the State Police should be called?
>
> A.    In addition to the notification list?
>
> Q.    Yes.
>
> A.    Not to my knowledge.

(Doc. 48, Ex. 8, NT 31-33).

Kenneth Matthews, Shift Manager of Security & Transportation for Mohegan Sun, testified as follows:

> Q.    Mr. Matthews, can you give us a sense of your knowledge of a notification list that Mr. Driscoll referenced earlier.  Are you familiar with that list?
>
> A.    Yes.
>
> Q.    Is that conspicuously posted anywhere here in the casino in the Security Department?
>
> A.    Yes.

Q.   And not having seen it can you tell us who may read this transcript what are some of the items contained on that list?

A.   There is a regulatory items where the Gaming Control Board requires notification and there's - - as Director Driscoll mentioned there is numerous criminal items where the State Police require notification, and there is some items on there that require notification of both.

Q.   Is a lost or discarded ticket, if you know, in and of itself contained on that list?

A.   I don't know if it specifically says lost ticket.

Q.   In any event, the list is a combination of the State Police and the Gaming Board's regulations and directives?

A.   Yes.

Q.   When you're performing your duties as shift supervisor do you operate out of a specific area of the casino?  An office?

A.   We have an office.  I spend most of my time on the floor.

Q.   In September of 2007 what was the form of communication between the security officers?  Was it walkie-talkie?  Cell phone?  Ear pieces?

A.   Most commonly radio, but we also use telephone.

Q.   In the log report out of the Surveillance Department I'm just going to read you the first sentence and then question you on it.  Under synopsis of the surveillance log it reads, and I'm quoting: "Surveillance received a call from SEC 208 requesting a review of possible theft of a bank envelope."

Is the SEC is that Section 208 or does that reference a - -

A.      - - I'm not familiar with the surveillance log, but I would - - if I had to guess I
would say it would be Security Officer 208.

Q.      Do you know who Security Officer 208 is?

A.      I don't know who it was at that time.

Q.      Let me just go through this.  Security 208 is referenced in the log report form
surveillance and then Security 202 and 301 apparently arrived in the area and
was briefed by 208.

Are you either 202 or 301?

A.      I was 301 at that time.

Q.      Looking at this report can you tell us who 202 is?

A.      It would have been Kris Karnis.  He's still 202.  That's how I remember that one.

Q.      How come your not 301 anymore?

A.      I transferred shifts.  I'm now on - - I'm 201 at this time on second shift.

Q.      Karnis is 202.  right?

A.      When you and Karnis, you must have arrived at the same time according to that
report?

A.      According to the report, yes.

Q.      And you have no recollection.  We're going back a few years.

A.      Right.

Q.      Are you Karnis' supervisor at the time?

A.      Yes.

Q.      Once you arrived it says "you were briefed by 208." That's what the report says.

Your recollection is you don't have any independent recollection of events that

evening?

A.      Right.

Q.      If then goes on to say: "A review was performed by Agent Sepala." Is Agent

Sepala a member of the Surveillance Department?

A.      Yes.

Q.      Did you know Gaming Control Board Agent Jeff Kowalski?

A.      I knew him, yes.

Q.      Do you recall interacting with him that evening?

A.      No I don't recall.

Q.      Were you there when my client Richard Piazza was approached.

A.      Not to the best of my recollection.

(Doc. 48, Ex. 9, NT 8-12).

## V.  Discussion.

Initially, as noted, we agree with Defendant CT Corporation that since the Court has

previously dismissed Plaintiff's conspiracy claim against Commonwealth Defendants, including

Defendant Trooper Szczecinski, Plaintiff does not have a conspiracy claim, either under state law

or under §1985(3), against it. If Plaintiff did have a conspiracy claim remaining against Defendant

CT Corporation, we agree with Defendant that it would essentially mean CT Corporation conspired

with itself.  Regardless, we find that Plaintiff has failed to present evidence to show a conspiracy by Defendant CT Corporation.

"The intracorporate conspiracy doctrine holds that no claim for conspiracy can arise between an entity and its employees." *Feinberg v. Eckelmeyer*, 2009 WL 4906376, *11 (E.D. Pa. 12-16-09).  Citations omitted.  Further, "a corporation cannot conspire within itself" and "the acts of the agents of a corporation are the acts of the corporation."  *Id*. Citation omitted.

Additionally, as noted above, in *Sarteschi v. Pennsylvania*, 2007 WL 1217858, *5 (M.D. Pa. 4-24-07), the Court stated that "a §1985(3) claim can be based on a conspiracy among officers of a single entity but can not be based on a conspiracy among the entity and its officers unless the officers acted in a personal capacity or unless independent third parties are alleged to have joined the conspiracy." Citations omitted.   We do not find that Plaintiff asserted a conspiracy claim in his Amended Complaint based on a conspiracy among officers of Defendant CT Corporation or based on an allegation that Defendant CT Corporation conspired with its officers who were acting in a personal capacity.  (Doc. 8, Court Two).  In fact, Plaintiff did not name any officers of Defendant CT Corporation as Defendants in his Amended Complaint.  Nor can Plaintiff now argue that independent third parties, *i.e.* the Commonwealth Defendants, joined the conspiracy since the Court previously dismissed the conspiracy claims against these Defendants.   Thus, the intracorporate conspiracy doctrine applies in this case with respect to any conspiracy claim Plaintiff contends remains as against Defendant CT Corporation.

In order to set forth a § 1983 cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d

31

1364, 1377 (3d Cir.1992); *Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir.1989); *Durre v. Dempsey,* 869 F.2d 543, 545 (10th Cir.1989). The Third Circuit has noted that a civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the conduct that violated the plaintiff's rights; (2) the time and the place of the conduct; and (3) the identity of the officials responsible for the conduct. *Oatess v. Sobolevitch,* 914 F.2d 428, 432 n. 8 (3d Cir.1990). *See also, Colburn v. Upper Darby Twp.,* 838 F.2d 663 (3d Cir.1988).

The essence of a conspiracy is an agreement or concerted action between individuals. *See D.R. by L.R.,* 972 F.2d at 1377; *Durre,* 869 F.2d at 545.  A plaintiff must therefore allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. *See id.; Rose,* 871 F.2d at 366. Where a civil rights conspiracy is alleged, there must be specific facts which tend to show a meeting of the minds and some type of concerted activity. *Deck v. Leftridge,* 771 F.2d 1168, 1170 (8th Cir.1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. *Young v. Kann,* 926 F.2d 1396, 1405 n. 16.

In the present case, Plaintiff fails to produce any evidence  showing a meeting of the minds between Defendant CT Corporation and others, i.e. PSP Troopers.  Additionally, Plaintiff fails to show  that  Defendant CT Corporation  acted with an intention to deprive him of a protected federal right.  As such, we will recommend that to the extent Plaintiff is deemed as raising a § 1983 civil conspiracy claim against Defendant CT Corporation, that Defendant's be Summary Judgment Motion be granted.

Moreover, in so far as Plaintiff's allegations may be construed as alleging a civil conspiracy under Pennsylvania law, we will also recommend that Defendant CT Corporation be granted summary judgment on such a state law claim.   In *Grose v. Procter & Gamble Paper Products*, 866 A.2d 437, 440-41 (Pa. Super. 2005), the Court stated:

> In order for a claim of civil conspiracy to proceed, a plaintiff must "allege the existence of all elements necessary to such a cause of action." *Rutherfoord v. Presbyterian-University Hospital*, 417 Pa. Super. 316, 612 A.2d 500, 508 (1992) (citation omitted).

> The Pennsylvania Supreme Court set forth the elements of civil conspiracy in *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211, 412 A.2d 466, 472 (1979): "It must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." Proof of malice, i.e., an intent to injure, is an essential part of a conspiracy cause of action; this unlawful intent must also be without justification. Furthermore, a conspiracy is not actionable until "some overt act is done in pursuance of the common purpose or design...and actual legal damage results." *Id.*

> In addition, "[a] single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." *Id.*

In *Adams v. Teamsters Local 115*, 214 Fed. Appx. 167, 175 (3d Cir. 2007), the Court stated, "[t]he sufficiency of a claim for civil conspiracy under state law, brought in federal court, is governed by the Federal Rules of Civil Procedure. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F. 3d 912, 926 (9th Cir. 2001)(viewing a state law claim brought in federal court under federal pleadings standards)(citation omitted). The Court in *Adams* also stated:

> A defendant acts under color of state law "if ... there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.' " *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)). A plaintiff may show such a nexus by establishing that the state and a private actor conspired with one another to violate an individual's rights. *Adickes,* 398 U.S. at 152, 90 S.Ct. 1598. In this event, a plaintiff must allege and prove the elements of a

civil conspiracy. *See Melo v. Hafer,* 912 F.2d 628, 638 n. 11 (3d Cir.1990) (citing *Hampton v. Hanrahan,* 600 F.2d 600, 620-21 (7th Cir.1979), *rev'd in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980)).

A civil conspiracy is " 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.' " *Hampton,* 600 F.2d at 620-21 (quoting *Rotermund v. U.S. Steel Corp.,* 474 F.2d 1139 (8th Cir.1973) (quotation marks omitted)). This agreement can be shown by direct or circumstantial evidence. *See Ball v. Paramount Pictures,* 169 F.2d 317, 319-20 (3d Cir.1948) (holding that a "conspiracy may be inferred when the concert of action 'could not possibly be sheer coincidence' ").

214 Fed. Appx. at 172.

Plaintiff offered no evidence that Defendant CT Corporation made any agreement with the PSP Troopers to take custody of him after they reviewed the DVD surveillance video and to detain him in the PSP office for 60 to 90 minutes.   Rather, the evidence shows that the PSP Troopers made these decisions on their own and that Defendant CT Corporation 's employees at Mohegan Sun had no control or authority over the PSP Troopers.  The evidence also shows that Mohegan Sun employee had no personal involvement in the seizing of Plaintiff and in the detention of Plaintiff by PSP Troopers.

Additionally, Plaintiff fails to demonstrate any conspiracy under §1985(3) existed in this case.

In *Tomino v. City of Bethlehem*, 2010 WL 1348536, *16 (M.D. Pa. 3-31-10), the Court stated:

In order to establish a claim for conspiracy under § 1985(3), a plaintiff must show the following elements:

34

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Farber v. City of Patterson,* 440 F.3d 131, 134 (3d Cir.2006).

Proof of conspiracy, or an agreement to commit an unlawful act, is an essential element under § 1985. *Gordon v. Lowell,* 95 F.Supp.2d 264, 270 (E.D.Pa.2000) (Van Antwerpen, J.). That is, "[a]n allegation of conspiracy is insufficient to sustain a cause of action under [§ 1985]; it is not enough to use the term 'conspiracy' without setting forth supporting facts that tend to show an unlawful agreement." *Id.*\*16 Although § 1985(3) applies to private conspiracies, it "was not intended to provide a federal remedy for 'all tortious, conspiratorial interferences with the rights of others,' or to be a 'general federal tort law.' " *Farber,* 440 F.3d at 135 (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338, 348 (1971). Thus, because § 1985(3) requires "the intent to deprive of equal protection, or equal privileges and immunities," a claimant must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" in order to state a claim. *Farber,* 440 F.3d at 135 (quoting *Griffin, supra* ).

Further, the complaint must allege that Defendants have engaged in invidious discrimination against the protected class and that the invidious discrimination has caused the Plaintiff injury." *Roach v. Marrow,* 2009 WL 3103781, *6 (M.D. Pa.)citing *Majewski v. Luzerne County,* 2007 WL 1074769 (M.D. Pa. 4-9-07).  In *Adams,* 214 Fed. Appx. at 171, n. 7,  the Court noted that to succeed on a §1985(3) claim, Plaintiff must prove that he was a protected class within the meaning of §1985(3).  Plaintiff Piazza offers no such evidence.

Based on our above discussion detailing the facts of Plaintiff's case against  Defendant CT Corporation, we find Plaintiff has not stated that he falls within any class entitled to protection afforded by §1985(3).  Further, Plaintiff does not state that the alleged conspiracy

"was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber v. City of Patterson*, 440 F. 3d 131, 135 (3d Cir. 2006).

Thus, we will recommend that Defendant CT Corporation be granted summary judgment insofar as Plaintiff is deemed as raising a conspiracy claim under §1985(3) against it. *See Tomino, supra*.

We also agree with Defendant CT Corporation and find under Pennsylvania law that Plaintiff failed to show  that it acted with any common purpose to do an unlawful act or to do an otherwise lawful act by unlawful means.  We also find that Plaintiff failed to show  that Defendant CT Corporation committed an overt act in pursuance of any common purpose. There is no evidence that would permit a jury to draw an inference that any conspiracy existed in this case to illegally seize and detain Plaintiff and that Defendant CT Corporation was part of a conspiracy.

As such, insofar as Plaintiff may be construed as still having a pending civil conspiracy under either state law or federal law against Defendant CT Corporation, we will recommend that Defendant be granted summary judgment on such claim.

Since we find that only Plaintiff's negligence claim against Defendant CT Corporation raised in Count Nine of his Amended Complaint remains as against this Defendant, we only address this claim below.  Plaintiff essentially claims that since  Mohegan Sun security personnel got the PSP involved in the September 22, 2007 incident, and since  Mohegan Sun security personnel should have handled the entire matter themselves based on Ms. Wallick's and Mr.

Martin's reporting that their vouchers were lost and not stolen, Mohegan Sun is liable on his negligence claim for failing to train its security personnel on how to properly handle such matters and when to get the PSP involved.   Plaintiff also contends that Mohegan Sun was negligent for failing to have signs directing patrons what to do if they found lost vouchers and that it should have printed such directions what to do on the back of vouchers.  (Doc. 44, ¶'s 10.-12.).[11]

In *Evanko v. Management & Training Corp.*,  546 F. Supp. 2d 188, 191 (M.D. Pa. 2008), the Court stated:

> Under Pennsylvania law, "[t]o establish a common law cause of action in negligence, 'the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff and the plaintiff suffered an actual loss or damage.' " *Brisbine v. Outside In School of Experiential Education, Inc.*, 799 A.2d 89, 93 (Pa.Super.2002) ( *quoting Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 40 (Pa.Super.2000)).

In *Phillips v. Northwest Regional Communications*, 669 F. Supp. 2d 555, 578 (W.D. Pa. 2009), the Court further explained:

> Under Pennsylvania law, the elements of negligence are (1) the existence of a duty requiring a person to conform to a certain standard of conduct; (2) the defendant's breach of the duty or failure to conform to the standard; (3) a causal connection between the breach of the duty and the resulting injury; and (4) actual loss or damage to the plaintiff. Atcovitz v. Gulph Mills Tennis Club, 571 Pa. 580, 812 A.2d 1218, 1222 (2002). "It is well established that a cause of action in negligence requires allegations that establish the breach of a legally recognized duty or obligation that is causally connected to the damages suffered by the complainant." *Bilt-Rite Contrs., Inc. v. Architectural Studio*, 581 Pa. 454, 866 A.2d 270, 280 (2005) (internal

---

11.  The evidence shows that Plaintiff knew what to do when he had previously found a woman's wallet in the Casino parking lot  and he turned it over to Mohegan Sun personnel.  (Doc. 48, ¶ 29. & Doc. 46, Ex. A, NT 91).  Thus, it appears that Plaintiff knew what to do if he found lost items at the Casino.

quotation omitted.) "Absent a breach of duty, a negligence claim cannot be sustained." *Marshall v. Port Authority of Allegheny County,* 524 Pa. 1, 568 A.2d 931, 935 (1990). "The existence of a duty is a question of law for the court to decide." *R.W. v. Manzek,* 585 Pa. 335, 888 A.2d 740, 746 (2005) (citations omitted.)

*See also Morrison v. Wells Fargo Bank, N.A.,* 711 F. Supp. 2d 369, 383 (M.D. Pa. 2010).

In his opposition brief, Plaintiff argues:

> Mohegan Sun was negligent in taking a patron's complaint of a lost voucher which was transmitted to its surveillance department and then, after reviewing video surveillance, which obviously does not reveal any conduct remotely approaching criminal behavior, and then reporting same as a possible "theft" from a patron's purse.  This negligence spawned events that ultimately led to the Plaintiff being charged criminally.  When one looks to the lack of internal controls and similar deficiencies in the Mohegan Sun operation, it is difficult to fathom that the would even attempt summary judgment on this record.

> It is undisputed that Mohegan Sun lacked written procedure for its patrons as of September 22, 2007 concerning lost or misplaced vouchers. The actual vouchers utilized by the Defendant were silent as to what a patron should do if one found a discarded voucher and there were no signs advising patrons anywhere within the casino.  (*See* Plaintiff's Statement of Material Facts (Doc. 44) at ¶¶ 9-14.).

> Mohegan Sun advances the argument that they were somehow duty bound to involve the State Police in the Piazza matter crying "it is out of our hands."  In reliance upon this position, the moving Defendant turns a blind eye to the operator notification list advanced by the Pennsylvania Gaming Control Board and the Pennsylvania State Police which is entirely silent that lost or discarded casino vouchers mandate notification to the State Police. (*See* Plaintiff's's Statement of Material Facts. (Doc. 44 at ¶ 15.)  Dennis Driscoll, the head of security for the casino has stated that not every discarded piece of paper triggers notification to the State Police.  (*See* Plaintiff's Statement of Material Facts (Doc. 44) at ¶44.)

> It is also beyond argument that Mohegan Sun had no accounting and internal controls on September 22, 2007 that dictated when the surveillance department would report to the Pennsylvania State Police.  The moving Defendant also lacked standard operating procedures for its security, slot and

surveillance departments, (*See* plaintiff's Statement of Material Facts (Doc.  44) at ¶¶16-18.)

> The negligence of Mohegan Sun is readily apparent when one views the depositional testimony of its shift manager on September 22, 2007 who indicated that "surveillance received a call from section 208 requesting review of a possible theft of bank envelope."  Yet Chris Kanis who was on the floor and who contacted surveillance did not relate anything remotely approaching a theft.  (*See* Plaintiff's Statement of Material Facts (Doc. 44) at ¶47.)

> An objective review of the surveillance video clearly shows that patron Wallick dropped her bank envelope mistakenly and Richard Piazza picked up the envelope innocently.  Mohegan Sun was negligent in the way they handled this entire matter and their negligence is so pronounced when one views the fact that they lacked any internal controls or standard operating procedures on the date in question.  Richard Piazza suffered as result of the casino's negligence.

(Doc.  50, pp. 8-10).

Initially, insofar as Plaintiff relies on *Romanski v. Detroit Entertinment, LLC*, 428 F. 3d 629 (6th Cir. 2005), *cert. denied*, 549 U.S. 946 (2006), we agree with Defendant CT Corporation and its rationale in its reply brief (Doc. 63, pp. 13-17) that the instant case is distinguishable from *Romanski*.   The main difference is that the officers in *Romanksi* were deemed state actors with respect to Plaintiff Romanski's §1983 claims against them.  In our case, similar to *Pugh v. Downs*, 641 F. Supp. 2d 468 (E.D. Pa. 2009), there is no evidence that the security personnel of Mohegan Sun were state actors, and Plaintiff Piazza does not sue Mohegan Sun (CT Corporation) for violations of his constitutional rights under §1983.  Rather, Plaintiff only asserts the stated negligence claim against Defendant CT Corporation, Doc. 8, Count Nine. In fact, based on *Pugh*, if Plaintiff had raised a constitutional  claim against CT Corporation under §1983, like the Plaintiff in *Romanski* did, such a claim would have been dismissed.  The

security personnel at Mohegan Sun were clearly private actors and as such, Plaintiff Piazza

correctly did not assert claims under §1983 against them and the Casino, unlike the facts in

*Romanski* in which the officers were deemed state actors exercising state power and Plaintiff

Romanksi asserted claims against them under §1983.

We also agree with Defendant CT Corporation that Plaintiff has failed to establish

through the evidence that it owed any duty to him.  (Doc. 47, pp. 10-13).

In *Morrison v. Wells Fargo Bank, N.A.*, 711 F. Supp. 2d at 383, the Court stated:

> "The existence of a duty is a question of law for the court to decide." *Manzek, supra,* 888 A.2d at 746. A duty "consists of one party's obligation to conform to a particular standard of care for the protection of another." *Id.* "[T]he legal concept of duty of care is necessarily rooted in often amorphous public policy considerations, which may include our perception of history, morals, justice and society." *Althaus v. Cohen,* 562 Pa. 547, 756 A.2d 1166, 1169 (2000). "The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor, and (5) the overall public interest in the proposed solution." *Id.* "Although these factors guide the court's inquiry '[i]n determining the existence of a duty of care, it must be remembered that the concept of duty amounts to no more than the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection from the harm suffered.' " *Berrier v. Simplicity Manufacturing, Inc.,* 563 F.3d 38, 61 (3d Cir.2009) (quoting *Althaus, supra,* 756 A.2d at 1168-1169).

We agree with Defendant CT Corporation which states in its reply brief (Doc. 63, p.

17) as follows:

> Mohegan received Ms. Wallick's initial complaint and notified the PSP presence that Mr. Piazza was in possession of Ms. Wallick's vouchers; at that point, Mohegan ceased any involvement whatsoever.  Mohegan did not approach Mr. Piazza, question or interview him, escort him to the PSP room, confiscate his belongings, search him, or even ask him to leave the Casino. Notably, Mr. Piazza himself admitted many times that from the moment he retrieved Ms. Wallick's vouchers from the Casino floor to the time the PSP

escorted him out of the building, he had no contact whatsoever with Mohegan personnel.  Mohegan's SMF ¶¶ 4-6, 10, 14, 19 and 21.

Additionally, under PA law of negligent supervision, "an employer may be liable for negligence 'if it knew or should have known that an employee was dangerous, careless or incompetent and such employment might create a situation where the employee's conduct would harm a third person.'"  *Blunt v. Boyd Gaming Corp.*, 2008 WL 4694757, *6 (E.D. Pa. 10-23-08)(citations omitted).  The *Blunt* Court also stated:

> Fundamentally, Pennsylvania examines "(1) what was [the employee's] conduct prior to [the commission of the alleged tort] and was it of such nature as to indicate a propensity for [committing that tort]? (2) did [the employer] know, or in the exercise of ordinary care, should it have known of [the employee's] prior [tortious] conduct?" *Dempsey,* 246 A.2d at 422.

There is no evidence presented by Plaintiff that any of Defendant CT Corporation's security personnel involved with the September 2007 incident had engaged in prior conduct which Defendant knew or should have known would indicate a propensity for committing a tort by improperly handling a situation in which a customer lost vouchers.  Thus, Plaintiff has not established any negligent supervision claim against Defendant CT Corporation.  *Id.*

Further, as Defendant CT Corporation states, its actions taken by its employees in this case were required by Pennsylvania state law.  (Doc. 47, pp. 11-13 and Doc. 63, p. 17).  As mentioned, Plaintiff essentially claims that in light of the initial complaint from Ms. Wallick that she lost her vouchers, the security personnel at Mohegan Sun should have handled the matter themselves and should not have contacted PSP.  However, 4 Pa.C.S.A. §1517 (January 7, 2010), Investigation and Enforcement,  provides, in pertinent part, as follows:

(a) Establishment. – There is hereby established within the board a Bureau of Investigations and Enforcement which shall be independent of the board in matters relating to the enforcement of this part. The Bureau shall have the powers and duties set forth in subsection (a,1).

   (a.1) Powers and duties of Bureau.–The Bureau of Investigations and Enforcement shall have the following powers and duties:

(7) Refer possible criminal violations to the Pennsylvania State Police.  The Bureau shall not have the power to arrest.

(8) Cooperate in the investigation and prosecution of criminal violations related to this part.

(c) Powers and duties of the Pennsylvania State Police.–-The Pennsylvania State Police shall have the following powers and duties:

(3) Initiate proceedings for criminal violations of this part.

(6) Enforce the criminal provisions of this part and all other criminal laws of the Commonwealth.

Thus, we concur entirely with Defendant CT Corporation (Doc. 47, pp. 12-13) that Mohegan Sun security personnel were not negligent for reporting the lost vouchers involving Ms. Wallick to the PSP since they were obliged to do so, and since PSP had the power and duty to enforce criminal violations at the Casino.  After the incident was reported to the PSP by Mohegan Sun security personnel, the evidence shows that Mohegan Sun security personnel had no involvement with the decisions of the PSP troopers to take custody of Plaintiff and detain him for 60 to 90 minutes.   The evidence also shows that Mohegan Sun security personnel had no involvement with the decision of Defendant Trooper Szczecinski to file criminal charges against Plaintiff.

Also, to the extent Plaintiff may be claiming that CT Corporation had a duty to control the acts of the PSP,  who allegedly caused the damages to Plaintiff, we find no such relationship between Defendant CT Corporation and the PSP.  The Court in *Evanko*  stated:

The *Brisbine* case considered the duty of a third party, explaining "[g]enerally, there is no duty to control the acts of a third party unless the defendant stands in some special relationship with either the person whose conduct needs to be controlled or in a relationship with the intended victim of the conduct, which gives the intended victim a right to protection." 799 A.2d at 93 (citations omitted). *Brisbine* further explained that a special relationship is limited to the relationships found in Sections 316-319 of the Restatement (Second) of Torts. 799 A.2d at 93 (citations omitted). The specific relationships identified are the following: 1) a parents duty to control a child (Section 316); 2) a master's duty to control a servant (Section 317); 3) a possessor of land's duty to control a licensee (Section 318); and 4) the duty of those in charge of individuals with dangerous propensities to control the individuals (Section 319). Id.

546 F. Supp. 2d  at 192.

In short, since we find no disputed material facts that Defendant CT Corporation breached any duty it owed to Plaintiff regarding the September 22, 2007 incident and how Casino employees handled it, we will recommend that the Court grant this Defendant's Summary Judgment Motion and deny Plaintiff's cross Summary Judgment Motion against it.  The PSP troopers are the ones who confronted Plaintiff after the vouchers of Ms. Wallick were reported missing.  The PSP troopers are the ones who escorted Plaintiff to their office upstairs and, the PSP troopers detained and questioned Plaintiff for 60 to 90 minutes.  Further, the PSP troopers are the ones who decided to file criminal charges against Plaintiff under 18 Pa.C.S.A. §3924 and §3925.  There is no evidence that any Casino employee exercised any control over the PSP troopers and how PSP troopers handled the incident after they became involved.  Also, as stated, Casino employees had no role in the decision of the PSP troopers to file criminal charges against Plaintiff.  Thus, despite the lack of written procedures at Mohegan Sun for lost vouchers, despite the lack of instructions on the vouchers what to do if someone finds a

voucher, and despite the fact that no signs were posted in the Casino what to do with found vouchers, Casino employees were merely trying to assist Ms. Wallick in finding her lost vouchers.  Once the Casino employees in the surveillance department reviewed a male patron picking up Ms. Wallick's envelope with her vouchers, the PSP troopers were notified and took over the incident.  (Doc. 46, Ex. N).  Casino employees had no other involvement in the incident except when Plaintiff was being escorted out by the PSP troopers and he walked toward a security employee who mentioned "Sky" (casino surveillance system) and, the employee told Plaintiff that matter was out of his hands.  (Doc. 48, ¶ 35.).

Accordingly, we will recommend that Defendant CT Corporation's Summary Judgment Motion **(Doc. 45)** be granted and, that Plaintiff's Summary Judgment Motion **(Doc. 40)** as against Defendant CT Corporation be denied.

**VI.  Recommendation.**

Based on the foregoing, we respectfully recommend that Defendant CT Corporation's Motion to Strike **(Doc. 60)** be granted in part and denied in part as discussed above.  We also recommend that Defendant CT Corporation's Summary Judgment Motion **(Doc. 45)** be granted, and that Plaintiff's Summary Judgment Motion **(Doc. 40)** as against Defendant CT Corporation be denied with respect to Plaintiff's Pennsylvania state law negligence claim and with respect to any conspiracy claim Plaintiff is deemed as asserting

against Defendant CT Corporation.[12]  Further, we recommend that the Court enter judgment in favor of Defendant CT Corporation and against Plaintiff Piazza.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: April 12, 2011**

---

12.   As stated above, by separate Report and Recommendation we considered the cross summary judgment motions of Plaintiff and Defendant Trooper Szczecinski with respect to Plaintiff's Fourth Amendment claim under §1983 against this Defendant.  (Doc. 78).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD PIAZZA,                    :        CIVIL ACTION NO. **3:CV-09-1087**
                                   :
            Plaintiff              :        (Judge Conner)
                                   :
            v.                     :        (Magistrate Judge Blewitt)
                                   :
CT CORPORATION, t/d/b/a Mohegan    :
Sun at Pocono Downs and            :
PENNSYLVANIA STATE POLICE          :
DIVISION OF GAMING ENFORCEMENT,    :
                                   :
            Defendants             :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **April 12, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

46

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                         s/ Thomas M. Blewitt
_____    THOMAS M. BLEWITT
                                         United States Magistrate Judge


**Dated: April 12, 2011.**