## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD PIAZZA,** | : | **CIVIL ACTION NO. 3:09-CV-1087** |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CT COPORATION, t/d/b/a** | : | |
| **MOHEGAN SUN AT POCONO** | : | |
| **DOWNS and PENNSYLVANIA** | : | |
| **STATE POLICE DIVISION OF** | : | |
| **GAMING ENFORCEMENT,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Presently before the court are the reports and recommendations (Docs. 78, 79) of the magistrate judge concerning the disposition of: (1) defendant Trooper Curt A. Szczecinski's ("Szczecinski") motion for summary judgment (Doc. 32) and motion to strike (Doc. 52); (2) defendant CT Corporation, t/d/b/a Mohegan Sun at Pocono Down's ("Mohegan Sun") motion for summary judgment (Doc. 45) and motion to strike (Doc. 60); and (3) plaintiff Richard Piazza's ("Piazza") motion for partial summary judgment (Doc. 40). Szczecinski and Piazza have filed objections

(Docs. 80, 82) to the magistrate judge's reports.  For the reasons set forth below, the

court will adopt the reports and recommendations in part and reject them in part.[1]

## I.   <u>Factual Background & Procedural History</u>[2]

In the early evening hours of September 22, 2007, Piazza arrived at the

Mohegan Sun Casino with his wife Marianne Piazza.  (<u>Id.</u> ¶ 1).  Kevin Martin

("Martin") and Kelly Wallick ("Wallick") were simultaneously patronizing the

Mohegan Sun Casino.  (Doc. 44 ¶ 2).  Mohegan Sun video surveillance footage

recorded the events at issue in this lawsuit.  The footage shows the following:

1.     Piazza is playing slots (6:50 p.m.).

2.     On multiple occasions, Piazza looks toward his left in the general
       direction of Wallick and Martin, who are also playing slots (6:50:22,
       6:50:35, 6:50:44, 6:50:49, 6:50:54, 6:51:01).

3.     Martin gets up from his slot machine (6:51:11).

4.     Martin crosses the aisle to a slot machine five seats to the left of the
       slot machine where Piazza is sitting (6:51:32).

5.     Piazza looks toward his left in the direction of Wallick (6:51:39).

---

[1]  To be clear, and to provide an accurate record for appeal, the court rejects all
aspects of the reports and recommendations with the exception of certain ultimate
conclusions of the magistrate judge.  Although certain matters are undisputed and
the magistrate's reports accurately set forth portions of the factual backdrop to
plaintiff's claims, the court finds the reports to be rather confusing and, at least in
part, clearly erroneous.  Hence, the court will independently delineate the facts and
provide legal analysis on all issues.

[2]  Piazza did not respond to Mohegan Sun's statement of material facts.  (Doc.
48).  All are deemed admitted.  <u>See</u> L.R. 56.1 ("The papers opposing a motion for
summary judgment shall include a separate, short and concise statement of the
material facts, responding to the numbered paragraphs set forth in the statement
required in the foregoing paragraph, as to which it is contended that there exists a
genuine issue to be tried.").

6.    An envelope is plainly visible on Wallick's lap (6:51:39).[3]

7.    Wallick crosses the aisle towards Martin and drops the envelope (6:51:44).

8.    Piazza looks toward his left in the direction of Wallick and Martin (6:51:59).

9.    Piazza stands up, walks towards Wallick and Martin, and bends over to pick an object off the ground (6:52:04-6:52:07).

10.   Piazza picks up the envelope (6:52:08).

11.   Piazza walks back to his machine and immediately cashes out without speaking to any of patrons in the vicinity including Martin and Wallick (6:52:10-6:52:23).

12.   Two casino employees walk into the area and Piazza looks in their general direction (6:52:11, 6:52:13).

13.   Piazza walks away in the opposite direction of Wallick and Martin (6:52:24).

14.   Piazza throws away the envelope in a trash can on another level of the casino (6:58:43).

(See Doc. 33, Ex. 3).  After throwing out the envelope, Piazza put the gaming vouchers on his money roll and continued to gamble at two different slot machines. (Doc. 33 ¶ 21; Doc. 48 ¶¶ 21-22).  Pizza knew the envelope contained gaming vouchers and knew the envelope did not belong to him.  (Doc. 48 ¶¶ 6, 8).  Piazza did not tell any Mohegan Sun employees that he was in possession of the vouchers or ask to be directed to Mohegan Sun's lost and found or security office.  (Id. ¶¶ 19-20).

Shortly after Piazza picked up the envelope containing the vouchers, Wallick realized her vouchers were missing.  (Doc. 44 ¶ 22).  Wallick notified Mohegan Sun

---

[3]  The envelope contained $ 89.00 worth of  gaming vouchers.  (Doc. 33 ¶ 41).

security officer Kris Karnis ("Karnis") that her vouchers were missing.  (Doc. 46, Ex. N at 2).  Karnis contacted Dan Sepela ("Sepela"), a member of the Mohegan Sun surveillance department, to review the surveillance footage.  (Doc. 46, Ex. N at 2).  Sepela reviewed the surveillance footage described above.  (Id.)

Mohegan Sun security personnel are required to report certain possible criminal behavior to the Pennsylvania State Police ("PSP") and these requirements are conspicuously posted at Mohegan Sun.  (Doc. 48 ¶¶ 41-42).  Theft is a crime that requires immediate notification to PSP.  (Doc. 46, Ex. H).  The PSP has jurisdiction to investigate and enforce the criminal provisions of the Commonwealth on the casino floor.  4 Pa. Con. Stat. § 1517 (c) (2006) (subsequently amended Jan. 7, 2010). Sometime after Wallick realized her vouchers were missing, Mohegan Sun personnel notified Pennsylvania State Police Trooper Szczecinski of a possible criminal incident.[4]  (Doc. 48 ¶ 23).

Szczecinski investigated the possible criminal activity.  The investigation involved watching the Mohegan Sun surveillance footage described above and taking statements from both Wallick and Martin.  (Doc. 33 ¶¶ 33, 35-36).  Mohegan Sun personnel located Piazza in the casino and Szczecinski and two other PSP troopers approached him.  (Doc. 48 ¶ 27).  Upon questioning, Piazza produced the gaming vouchers from his money roll and admitted that he had thrown out the envelope.  (Doc. 33 ¶ 38).  Szczecinski and the other troopers escorted Piazza to the

---

[4]  Mohegan Sun denies that its personnel contacted the PSP.  In the light most favorable to Piazza, however, the evidence suggests a Mohegan Sun employee contacted PSP after Sepela reviewed the footage.

trash can where Piazza had thrown out the envelope and Szczecinski recovered the envelope.  (Id.)  The troopers then took Piazza to a private room in the casino.[5]  (Doc. 48 ¶ 30).  At some point, Szczecinski fingerprinted and photographed Piazza.[6]  (Doc. 33 ¶ 30).  The total time Szczecinski spent with Piazza on September 22, 2007, was approximately five minutes.  (Id. ¶ 49).  After fingerprinting, Piazza was released and escorted out of the casino by unnamed PSP troopers.  (Id. ¶ 30; Doc. 48 ¶ 36).  According to Piazza, the entire encounter lasted ninety minutes.  (Doc. 48 ¶ 36).

On June 8, 2009, Piazza filed suit against Mohegan Sun and the PSP asserting civil rights violations pursuant to 42 U.S.C. § 1983 and state tort law claims.  (Doc. 1).  On August 31, 2009, Piazza filed an amended complaint naming Mohegan Sun, the PSP, PSP Trooper Curt A. Szczecinski, and PSP Troopers John Does, Numbers One and Two as defendants.  (Doc. 8).  Piazza sued the PSP troopers in both their official and individual capacities.  (Id. at 2-3).  Mohegan Sun filed an answer with affirmative defenses on September 22, 2009, and the PSP, Szczecinski, and Troopers John Does Numbers One and Two (the "Commonwealth defendants") jointly filed a motion to dismiss plaintiff's amended complaint on September 24, 2009.  (Docs. 10, 11).

---

[5]  The parties dispute whether Szczecinski was one of the troopers who escorted Piazza to the room.

[6]  Szczecinski prepared an affidavit of probable cause and filed criminal charges against Piazza on September 27, 2007.  (Doc. 48 ¶¶ 37-38).  These actions are irrelevant to Piazza's Fourth Amendment seizure claim based on his September 22, 2007, detention.

On February 3, 2010, the magistrate judge issued a report recommending granting the Commonwealth defendants' motion to dismiss as to all claims except for Piazza's Fourth Amendment illegal search and seizure claim (Count One) and Piazza's § 1983 malicious prosecution claim (Count Three) against Szczecinski in his individual capacity. (Doc. 15). The magistrate judge also recommended remanding the case to him for further proceedings with respect to the remaining claims against Mohegan Sun and Szczecinski. (Id.) On February 26, 2010, Judge Vanaskie adopted the report and recommendation. (Doc. 16). After remand, Szczecinski filed an answer to Piazza's amended complaint. (Doc. 19).

After the close of discovery, Szczecinski filed a motion for summary judgment on the remaining two claims against him.[7] (Doc. 32). Piazza filed a cross motion for summary judgment on the illegal search and seizure claim. (Doc. 40). Szczecinski then filed a motion to strike certain paragraphs in Piazza's statement of material facts and certain exhibits submitted with Piazza's motion for partial summary judgment. (Doc. 52). The magistrate judge recommended granting Szczecinski's motion to strike in part and denying it in part. (Doc. 78, at 45). The magistrate judge further recommended granting Szczecinski's motion for summary judgment to the extent Piazza asserts a Fourth Amendment illegal search claim against Szczecinski,[8] and recommended denying both Piazza's and Szczecinski's

---

[7] During the February 8, 2011, oral argument, Piazza withdrew his § 1983 malicious prosecution claim against Szczecinski. (Doc. 78, at 9).

[8] Piazza filed no objection to this recommendation. The court has reviewed this recommendation for clear error and has found none. The record is devoid of any evidence that Szczecinski searched Piazza.

motions for summary judgment with respect to Piazza's Fourth Amendment unlawful seizure claim.  (Id.)  Szczecinski filed objections to the magistrate judge's conclusion on Piazza's Fourth Amendment seizure claim.  (Doc. 80).

Piazza and Mohegan Sun also filed cross-motions for summary judgment. (Docs. 40, 45).  Mohegan Sun then filed a motion to strike certain paragraphs in Piazza's statement of material facts and certain exhibits submitted with Piazza's motion for partial summary judgment.  (Doc. 60).  The magistrate judge recommended granting Mohegan Sun's motion to strike in part and denying it in part.  (Doc. 79, at 44).  The magistrate judge further recommended granting Mohegan Sun's motion for summary judgment and denying  Piazza's summary judgment motion with respect to Piazza's negligence and conspiracy claims.[9]  (Doc. 78, at 44-45).  Piazza filed objections to the magistrate judge's conclusion that Mohegan Sun is entitled to summary judgment on his negligence claim.  (Doc. 82). The parties have fully briefed the issues, and the matter is now ripe for disposition.

---

[9] Piazza's briefs and the magistrate judge's reports fail to address Count Seven of Piazza's amended complaint (false imprisonment).  To the extent Piazza is still asserting a false imprisonment claim against Mohegan Sun, his claim is deemed waived.  L.R. 7.6 ("Any party who fails to comply with this rule shall be deemed not to oppose such motion.").

## II.   Standard of Review

### A.   Standard of Review for Cross-Motions for Summary Judgment

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(a).  The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(a).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

In the instant matter, the parties have filed cross-motions for summary judgment. (Docs. 32, 40, 45).  According to the Third Circuit:

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008) (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).  Each movant must show that no genuine issue of material fact exists; if both parties fail to carry their respective

8

burdens, the court must deny the motions.  See Facenda v. N.F.L. Films, Inc., 542

F.3d 1007, 1023 (3d Cir. 2008).  When reviewing each motion, the court is bound to

view the evidence in the light most favorable to the nonmovant.  FED. R. CIV. P. 56;

United States v. Hall, 730 F. Supp. 646, 648 (M.D. Pa. 1980).

### B.   Standard of Review for a Magistrate Judge's Recommendation

Where objections to a magistrate judge's report and recommendation are

filed, the court must perform a *de novo* review of the contested portions of the

report.  Supinski v. United Parcel Serv., Civ. A. No. 06-0793, 2009 WL 113796, at *3

(M.D. Pa. Jan. 16, 2009) (citing Sample v. Diecks, 885 F.2d 1099, 1106 n. 3 (3d Cir.

1989); 28 U.S.C. § 636(b)(1)(c)).  "In this regard, Local Rule of Court 72.3 requires

'written objections which . . . specifically identify the portions of the proposed

findings, recommendations or report to which objection is made and the basis for

those objections.'"  Id. (citing Shields v. Astrue, Civ. A. No. 07-417, 2008 WL

4186951, at *6 (M.D. Pa. Sept. 8, 2008)).

When parties do not raise objections to a magistrate judge's report and

recommendation, the Federal Magistrates Act does not require a district court to

review the report before accepting it.  Thomas v. Arn, 474 U.S. 140, 149 (1985).  As a

matter of good practice, however, the Third Circuit expects courts to "afford some

level of review to dispositive legal issues raised by the report."  Henderson v.

Carlson, 812 F.2d 874, 878 (3d Cir. 1987).  The advisory committee notes to Rule

72(b) of the Federal Rules of Civil Procedure indicate that "[w]hen no timely

objection is filed, the court need only satisfy itself that there is no clear error on the

face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b),

advisory committee notes; see also Cruz v. Chater, 990 F. Supp. 375, 378 (M.D. Pa.

1998) (holding that the court's review is limited to ascertaining whether there is

"clear error on the face of the record").

## III.   Discussion

### A.   Motions to Strike

The sole objection to the magistrate judge's report and recommendation with

respect to the motion to strike is to the magistrate judge's finding that the Mount

Airy Casino sign and voucher are irrelevant.  The exhibit relates to Piazza's

negligence claim against Mohegan Sun.  The court has performed a *de novo* review

on this issue.  No other objections relating to the motions to strike were filed.  The

court reviews these portions of the report for clear error.[10]

#### 1.   Szczecinski's Motion to Strike[11]

##### a.   Unsupported Statements of Material Fact

Motions for summary judgment must be accompanied by a separate, short

and concise statement of the material facts referring to the parts of the record that

support the statements.  Fed. R. Civ. P. 56(c); L.R. 56.1 ("Statements of material

facts in support of, or in opposition to, a motion *shall* include references to the parts

of the record that support the statements.") (emphasis added).  The court may

---

[10]   As explained below, the court finds the magistrate judge clearly erred on
numerous issues relating to the motions to strike.  The reports did not clearly
address some issues, and failed to address other issues altogether.

[11]   For the exact portions of each paragraph Szczecinski moves to strike, see
document 54.

strike unsupported facts.  FED. R. CIV. P. 56(e).  In his motion to strike, Szczecinski

argues that the following paragraphs of Piazza's statement of material facts

("SMF") are not supported by an adequate citation to the record in whole or in

part: 2, 3, 6, 7, 8, 25, 27, 29, 34, 35, 41,43, 44, 47, 48, 51, 53, 63, 72, 74, 75, 77, 80, 82, 83,

84, 88, 89, 90.  (Doc. 53, at 2).  The magistrate judge recommended striking each

paragraph.  (Doc. 78, at 10).

     The court has reviewed each paragraph and finds that the magistrate judge

clearly erred by striking paragraphs 35, 44, 51, 63, 77, 80, and 83 as these paragraphs

contain adequate citations to the record.  The court agrees with the magistrate

judge's recommendation with respect to the remaining paragraphs and strikes each

of these paragraphs to the extent requested by Szczecinski.  The court recognizes,

however, that Szczecinski was not substantially prejudiced by Piazza's unsupported

SMF and considers the stricken paragraphs, to the extent they are actually

supported by the record, in reaching a decision on the merits.  FED. R. CIV. P. 56(c)

("The court need consider only the cited materials, but it *may* consider other

materials in the record.") (emphasis added).

### b.    Immaterial Statements of Material Facts

     Szczecinski additionally moves to strike the following paragraphs of Piazza's

SMF in whole or in part as immaterial: 1, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18,

19, 20, 33, 34, 35, 36, 37, 41, 42, 43, 44, 45, 46, 48, 49, 50, 51, 52, 53, 54, 57, 59, 63, 70, 71,

77, 78, 79, 80, 81, 85, 86, 90, 91. (Doc. 53, at 4).  The magistrate judge recommended

striking each of these paragraphs as immaterial to Piazza's claim against

Szczecinski. (Doc. 78, at 10).

Not all facts are material.  A fact is material if the fact "might affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248. Immaterial facts may be stricken.  <u>Id.</u>  The court agrees with the magistrate judge and strikes the immaterial portions of each paragraph referenced as to Szczecinski, except paragraphs 85 and 86 of Piazza's SMF, which the court finds contain material facts related to Piazza's claim against Szczecinski.

### c.    Contested Exhibits

Szczecinski moves to strike a number of Piazza's exhibits.  Szczecinski moves to strike exhibits E, F, G, I, J, N, and O  (Doc. 46, Exs. E, F, G, I, J, N, O), on grounds that the exhibits relate solely to Mohegan Sun and are thus immaterial as to the claims against him.  (Doc. 53, at 8).  The magistrate judge recommended striking these exhibits as to Szczecinski.  (Doc. 78, at 33).  The court agrees that the exhibits relate solely to Piazza's case against Mohegan Sun and strikes each exhibit as to Szczecinski.

Szczecinski also moves to strike Piazza's exhibit Y (Doc. 46, Ex. Y), the "parallel DVD." (Doc. 53, at 7).  The magistrate judge did not address this portion of the motion to strike in the report that covered Piazza's claims against Szczecinski.  (<u>See</u> Doc. 78).  The court finds the split screen DVD to be wholly immaterial as to Szczecinski because it is not the video Szczecinski viewed on September 22, 2007.  (Doc. 53, at 7).  Thus, it sheds no light on whether Szczecinski had reasonable suspicion or probable cause to detain Piazza on September 22, 2007.

Next, Szczecinski moves to strike portions of the affidavits of Richard and Marianne Piazza claiming that they are not based on their personal knowledge and contain impermissible hearsay.[12] (Doc. 53, at 7). Federal Rule of Civil Procedure Rule 56(c)(4) requires that an affidavit "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. CIV. P. 56(c)(4). The magistrate judge stated, without further explanation, that he disagreed with Szczecinski. (Doc. 78, at 33). The magistrate clearly erred. The court finds that some of the purported hearsay in the affidavits has admissible non-hearsay purposes. For example, in paragraph four of Marianne Piazza's affidavit she avers that "Richard came to the area where I was located and said to me: 'Have you seen Mark, one of the managers, Paulie, one of the security people or Jen, our host?'" This out-of-court statement may be offered for a non-hearsay purpose such as indirect evidence of Piazza's state off mind, i.e. that he intended to return the vouchers. Additionally, Szczecinski's out-of-court statements are admissible under an exemption to the hearsay rules; when Piazza asserts them against Szczecinski for the truth of the matter asserted they qualify as an admission of a party opponent under Federal Rule of Evidence 801(d)(2). FED. R. EVID. 801(d)(2). The court strikes, however, the out-of-court statements of non-party opponents found in paragraphs four, and six through twenty-one of Marianne Piazza's affidavit, and paragraphs eleven and

---

[12] Hearsay is an out-of-court statement offered for the truth of the matter asserted. FED. R. EVID. 801(c).

thirteen of Richard Piazza's affidavit to the extent they are being offered for the truth of the matter asserted.

Finally, Szczecinski argues that the affidavit should be completely disregarded because it substantially contradicts Piazza's prior deposition testimony without explanation or independent evidence.  (Doc. 53, at 6).  An affidavit that conflicts with prior deposition testimony cannot be used to create an issue of fact unless independent evidence in the record bolsters the otherwise questionable affidavit, or some satisfactory explanation is provided.  See Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 254 (3d Cir. 2007).  The magistrate judge did not address this issue.  (See Doc. 78, at 31-33).  The court finds that most portions of the affidavit, including paragraphs referencing Piazza's desire to return the vouchers, do not substantially conflict with his deposition testimony.  The averments in paragraphs seventeen and twenty regarding the length of time Piazza was in the custody of Szczecinski, however, are completely contradicted by his prior deposition testimony.  (Doc. 33, Ex. 1, at 84-95).  No adequate explanation is given for the difference, and these claims are not supported by independent evidence.  Thus, the court strikes paragraphs seventeen and twenty.  See Jiminez, 503 F.3d at 254 ("When a party does not explain the contradiction between a subsequent affidavit and a prior deposition, it is appropriate for the district court to disregard the subsequent affidavit and the alleged factual issue in dispute as a 'sham . . . .'").

2.   **Mohegan Sun's Motion to Strike**[13]

a.   **Unsupported Statements of Material Fact**

Mohegan Sun moves to strike many of Piazza's SMF including paragraphs 2, 4, 6, 7, 8, 13, 14, 15, 16, 25, 27, 29, 34, 35, 36, 37, 39, 40, 41, 42, 43, 44, 47, 48, 50, 51, 53, 55, 60, 63, and 65, asserting that they either contain no citation or an inaccurate citation.  (Doc. 61, at 1-2).  The magistrate judge recommended granting the motion in its entirety.  (Doc. 79, at 11).  The court has reviewed the record and finds the magistrate judge clearly erred by striking paragraphs 15, 16, 35, 36, 37, 39, 44, 50, 51, 55, 60, and 63 as these paragraphs are adequately cited by Piazza.  The court agrees with the magistrate judge that the remaining paragraphs are not adequately cited in whole or in part and the court strikes each to the extent requested by Mohegan Sun.  Again, the court considers the uncited paragraphs to the extent the information is supported by the record.

b.   **Immaterial Statements of Material Facts**

Mohegan Sun moves to strike paragraphs 3, 6, 7, 9, 10, 11, 22, 27, 28, 29, 45, 52, 56, 58, 61, 65, and 66 of Piazza's SMF as immaterial.  (Doc. 61, at 2-3).  The magistrate judge recommended striking the referenced paragraphs.  (Doc. 79, at 11).  The court agrees and strikes each paragraph as immaterial to Piazza's claims against Mohegan Sun.

---

[13] For the exact portions of each paragraph Mohegan Sun moves to strike see Document 59.

### c.   **Contested Exhibits**

Mohegan Sun moves to strike Piazza's exhibits F and G—a sign and a voucher from Mount Airy Casino in the Poconos—as immaterial and as constituting inadmissible hearsay.  (Doc. 46, Ex. F, G).  The magistrate judge recommended striking the exhibits and Piazza objects.  (Doc. 79, at 12).  The court finds that the exhibits are immaterial and strikes the exhibits.  The notification provided by a single neighboring casino sheds no light on whether Mohegan Sun had a duty to notify patrons of their obligation to return lost gaming vouchers under Pennsylvania law.

Mohegan Sun also moves to strike the "parallel DVD" (Doc. 46, Ex. Y) submitted by Piazza.  (Doc. 61, at 4).  The magistrate judge recommended denying the motion. (Doc. 79, at 12).  The court finds the magistrate clearly erred.  The court strikes the "parallel DVD" as immaterial because it was not the footage viewed by Mohegan Sun security personnel. (See Doc. 61, at 4).  Therefore, the video sheds no light on reasonableness of Mohegan Sun employees' actions on September 22, 2007.

Finally, Mohegan Sun moves to strike portions of Marianne Piazza's affidavit, specifically paragraph four and paragraphs six through twenty one.  The magistrate judge recommended denying the motion to strike with respect to the affidavits.  For the reasons stated above, the court disagrees and strikes the portions of her affidavit containing out-of-court statements not made by Mohegan Sun employees to the extent they are being offered for the truth of the matter asserted.  See supra Part III.A.1.c.

### B. **Cross-Motions for Summary Judgment Regarding Szczecinski**

Szczecinski objects to the magistrate judge's report (Doc. 78) recommending the denial of his motion for summary judgment on Piazza's § 1983 Fourth Amendment unlawful seizure claim.[14]  The court rejects the magistrate judge's recommendation.  After *de novo* review, the court holds that there are no genuine disputes of material fact and that Szczecinski is entitled judgment as a matter of law on Piazza's Fourth Amendment unlawful seizure claim.  Szczecinski had probable cause to detain Piazza and is entitled to qualified immunity.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV.  A Fourth Amendment seizure inquiry involves a two-step analysis: (1) determining whether a seizure occurred, and if so, (2) determining whether the seizure was reasonable under the circumstances.  U.S. v. Smith, 575 F.3d 308, 312 (3d Cir. 2009).  A seizure occurs "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  U.S. v. Mendenhall, 446 U.S. 544, 545 (1980).  Arrest, detention and/or the placement of an individual in handcuffs are not necessary prerequisites to establish seizure.  See Gallo v. City of Philadelphia, 161 F.3d 217, 222-23 (3d Cir.

---

[14]  Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law by state officials.  See 42 U.S.C. § 1983. Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors.  Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 477 (3d Cir. 2003).  To establish a claim under this section, the plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

1998).  "Mere questioning" is not a seizure, but "an investigative stop that detains a citizen only momentarily" is a seizure.  See Florida v. Bostick, 501 U.S. 429, 434 (1991); Gallo 161 F.3d at 223.

There are no material facts in dispute regarding whether Szczecinski seized Piazza.  Although Szczecinski characterizes his involvement as limited, he admits that he questioned Piazza on the casino floor, took him to the trash can where the envelope was discarded, fingerprinted him, and photographed him.  (See Doc. 81, at 5, 11).[15]  The initial questioning on the casino floor would not implicate the Fourth Amendment, however, escorting Piazza to the trash can, fingerprinting him, and photographing him clearly transforms the encounter beyond mere questioning into, at a minimum, an investigative stop.  See Hayes v. Florida, 470 U.S. 811, 814-16 (1985) (noting that fingerprinting an individual implicates the Fourth Amendment); Davis v. Mississippi, 394 U.S. 721, 727 (1969).  The court holds that Szczecinski seized Piazza for Fourth Amendment purposes once he escorted Piazza from the casino floor to the trash can on another level of the casino.

Piazza's claim fails as a matter of law, however, because the seizure was reasonable.  See Brower v. County of Inyo, 489 U.S. 593, 599 (1989) (stating that a plaintiff must prove the seizure was unreasonable to recover under § 1983).  The level of justification needed to justify a seizure depends on the nature and scope of the detention.  Police officers may conduct brief investigatory stop if they have

---

[15]  Szczecinski seemingly admits a seizure occurred.  (See, e.g., Doc. 55 at 14 ("Having all of this information, the decision was made to briefly *detain* plaintiff, fingerprint him, and photograph him.") (emphasis added)).

"reasonable, articulable suspicion that criminal activity is afoot," but police officers must have probable cause to justify longer detentions that are considered full-scale arrests.[16] U.S. v. Whitfield, 634 F.3d 741, 744 (3d. Cir. 2010) (internal citations and quotations omitted); see Reedy v. Evanston, 615 F. 3d 197, 211 (3d Cir. 2010).

Probable cause requires a greater showing than reasonable suspicion, however, it is still a relatively "low standard." Wychunas v. O'Toole, 252 F. Supp. 2d 135, 142 (M.D. Pa. 2003) (noting that probable cause requires "only a fair probability that the person committed the crime."). Probable cause to arrest exists if objectively "at the moment the arrest was made . . . the facts and circumstances within the defendant's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the plaintiff had violated the law." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 789 (3d Cir. 2000) (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991) (internal quotations and brackets omitted)). An officer is not required to conduct an exhaustive investigation in order to validate probable cause and probable cause need only exist for a single criminal offense. See Merkle, 211 F.3d at 790 n.8; Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994). Typically, whether probable cause exists in a § 1983 case is a question of fact, however, a court may conclude in the appropriate case that probable cause exists as matter law "if the evidence, viewed most

---

[16] This court need not determine whether the scope and nature of Piazza's detention constituted a Terry stop or a full-blown arrest because, even when viewed in the light most favorable to plaintiff Piazza, the undisputed facts show that Szczecinski had probable cause to believe Piazza had committed a crime at the time the seizure occurred.

favorably to Plaintiff, reasonably would not support a contrary factual finding."
Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997).

The magistrate judge erred in concluding that a genuine issue of material fact exists as to whether Szczecinski had probable cause to detain Piazza.[17]  (Doc. 78, at 39).  The magistrate judge's report discusses numerous immaterial facts that relate solely to Piazza's dropped malicious prosecution claim and not Piazza's Fourth Amendment illegal seizure claim stemming from the September 22, 2007, detention (Count I).  (See Doc. 8, at 8-9).  The magistrate judge improperly relied on the following facts: (1) Piazza was never convicted of the theft charges later filed against him; (2) facts relating to the filing of charges and the affidavit of probable cause; and (3) the fact that Szczecinski did not re-file the charges after they were dismissed.[18]  (Doc. 78, at 26-28, 30, 41-42).  These facts shed no light on the ultimate issue of whether the facts and circumstances within Szczecinski's knowledge at the time of Piazza's seizure on September 22, 2007, would warrant a prudent man to believe Piazza had violated the law.  The magistrate judge's report also erred in

---

[17]  Szczecinski's objection that the magistrate judge improperly found a genuine issue of material as to Szczecinski's level of involvement is made immaterial by this holding.  (Doc. 81, at 5-11).  Assuming *arguendo* Piazza's characterization is correct—i.e. Piazza was in Szczecinski's custody while he was in the PSP office and the total detention lasted between sixty and ninety minutes—the existence of probable cause would justify the detention.  The court notes, however, that the only basis for Piazza's characterization is his affidavit that completely contradicts his previous deposition testimony.  See Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 254 (3d Cir. 2007)

[18]  The charges were dismissed after Szczecinski failed to appear at the preliminary hearing.  (Doc. 33 ¶ 45).

finding that factual disputes regarding Piazza's subjective intentions and knowledge created genuine issues of material fact. (Doc. 78, at 40-41). Piazza's subjective intentions are immaterial to the probable cause analysis, which is an objective inquiry of the facts and circumstances within Szczecinski's purview when he seized Piazza. Barna, 42. F.3d at 820-21 (noting that the plaintiff's subjective intentions were not relevant to the probable cause analysis).

An examination of the undisputed facts illustrate that Szczecinski had ample justification to believe that Piazza had committed theft. Under Pennsylvania law,

> [a] person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient is guilty of theft if, with intent to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to have it.

18 PA. CON. STAT. § 3924. Thus, the relevant inquiry under Title 18, Section 3924 of the Pennsylvania Consolidated Statutes ("Section 3924" or § "§ 3924") is whether Szczecinski could have reasonably believed that Piazza had come into control of property that he knew to have been lost or misplaced and failed to take reasonable measures to return the property to the person entitled to it with an intent to deprive the owner thereof. Id.

It is undisputed that Szczecinski viewed surveillance footage in the Mohegan Sun surveillance room and spoke to Martin and Wallick about the lost vouchers

prior to the seizure of Piazza.[19] (Doc. 33 Ex. 7 ¶¶ 4-8; Doc. 46 Ex. Q at 36-38).  The surveillance footage viewed by Szczecinski prior to detaining Piazza showed the following: (1) Piazza looked in the direction of Martin and Wallick multiple times prior to Wallick dropping the envelope on the casino floor; (2) the envelope was clearly visible on Wallick's lap when Piazza was facing her direction;[20] (3) Wallick dropped the envelope on the floor; (4) Piazza picked up the envelope; (5) Piazza looked in the direction of two casino employees and did not approach either of them; (6) Piazza did not approach or speak to any of the patrons in his immediate vicinity; (7) after picking up the envelope, Piazza immediately cashed out of his slot machine and walked away; and (8) Piazza threw away the envelope in another part of the casino.  (See Doc 33, Ex. 3).  Prior to encountering Piazza, Szczecinski also obtained statements from Martin and Wallick regarding Wallick's gaming vouchers. (See Doc. 33, Ex. 7 ¶¶ 4-8; Doc. 46, Ex. Q, at 36-38).  By the time Szczecinski approached Piazza on the casino floor, approximately twenty minutes had passed since Piazza had picked up the gaming vouchers and Piazza still had not returned the vouchers.  (Doc. 33, Ex. 6).

---

[19]  Piazza disputes whether Szczecinski viewed the video before or after talking to Martin and Wallick on the casino floor.  (See Doc. 39 ¶ 33). This is immaterial, however, because it is undisputed that both events occurred prior to the seizure. (See Doc. 33, Ex. 7 ¶¶ 4-8; Doc. 46, Ex. Q at 36-38).

[20]  To the extent Piazza argues that he was not looking in the direction of Wallick at the approximate time the vouchers were visible in Wallick's lap, the court finds his testimony definitively contradicted by the Mohegan surveillance footage.  (See Doc. 33, Ex. 3).

Szczecinski also obtained additional facts during the time Piazza concedes he was being legitimately questioned by police. (Doc. 38, at 7). During the initial questioning on the casino floor, Piazza admitted that the vouchers were on his money clip in his front pocket. (Doc. 33, Ex. 1, at 78-79). Piazza also verified that he had thrown out the envelope in another area of the casino. (Id. at 79-80). Although not necessarily indisputable evidence of Piazza's *actual* guilt, the court holds that no reasonable jury could find that Szczecinski did not have probable cause to believe Piazza had committed theft under § 3924 based on these undisputed facts. See Barna, 42 F.3d at 819 ("Evidence that may prove insufficient to establish guilt at trial may still be sufficient to find the arrest occurred within the bounds of the law."); see also Radich v. Goode, 886 F.2d 1391, 1397 (3d Cir. 1989) (observing that actual guilt innocence is irrelevant to the probable cause analysis).

Third Circuit cases have found probable cause to exist as a matter law in circumstances in which the evidence of probable cause was far less persuasive. See Merkle, 211 F.3d at 789-90 (holding that probable cause to arrest existed as a matter law based on the officer's reliance on a credible report of a single witness, and noting that the officer was not required to conduct an "exhaustive investigation"); Wilson v. Russo, 212 F.3d 781, 791-92 & n.8 (3d Cir. 2002) (holding that probable cause to arrest existed as a matter law based on the positive identification of the perpetrator by the victim despite the existence of three exculpatory facts); Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997) (holding that the officer had probable cause to arrest as a matter of law based on the victim's identification of her

husband as her attacker even when the officer was aware that the victim had identified a completely different person as the perpetrator in her initial 911 call); see also Wooleyhan v. Cape Henlopen Sch. Dist., 2011 WL 1875710 *9-10 (D. Del. 2011) (holding that probable cause to arrest existed as a matter of law when the officer received a positive identification from a reliable victim and other evidence was not "plainly exculpatory").  Clearly, a police officer does not need definitive proof of actual guilt to have probable cause to arrest.  In the instant case, Szczecinski did not rely primarily on information received from fallible witnesses. Instead, Szczecinski's determination of probable cause was based on his *first-hand knowledge* obtained through objective video evidence and plaintiff's incriminatory statements.  Thus, the court need not decide if Szczecinski's information came from a "credible' or "reliable" source.  Deary v. Three Un-Named Police Officers, 746 F.2d 185, 192 (3d Cir. 1984) (noting that summary judgment is appropriate "where no genuine issue as to any material fact exists and where credibility conflicts are absent").  The video shows Piazza engaging in behavior that is highly indicative of theft under § 3924 and the video's accuracy is not in dispute.  (Doc. 33, Ex. 1, at 158-59).

Piazza fails to address whether the objective facts available to Szczecinski justified his belief that Piazza was committing theft.  Instead, Piazza repeatedly argues that he intended to return the property, that he was merely seeking out casino personnel that he knew personally, and that he threw out the envelope because only the true owner would have known that the gaming vouchers had been

inside an envelope.  (See Doc. 46, Ex. C).  Whether Piazza actually was guilty of theft is not the relevant inquiry.  See Baker v. McCollan, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested."). Szczecinski is not omniscient; he based his probable cause determination on the objective evidence available to him, which did not include Piazza's unverifiable subjective intentions.  The fact that Piazza may have denied the theft and claimed to have returned property in the past fails to negate the objective facts known to Szczecinski, and forming the basis of his seizure of Piazza.  " A self-serving denial . . . does not defeat probable cause." Donohue v. Rineer, 2011 WL 3439174, at *8 (M.D. Pa., Aug. 5, 2011) (quoting United States v. Sarras, 575 F.3d 1191, 1219 (11th Cir. 2009) (quotations omitted)).  Similarly, Piazza's assertion that he did not know that it was Wallick who dropped the vouchers is irrelevant.  The surveillance footage clearly shows that Piazza had come into control of property that he knew to have been lost or mislaid, which is all that is required under § 3924.[21]  (See Doc. 33, Ex. 3). For these reasons, Szczecinski is entitled to judgment as a matter of law on Piazza's

---

[21] Piazza also admits that he knew that the vouchers did not belong to him.  (See Doc. 46, Ex. C ¶¶ 4-8).

Fourth Amendment seizure claim and his motion for summary judgment will be granted.[22]

### C. Cross-Motions for Summary Judgment Regarding Mohegan Sun

The magistrate judge recommended granting Mohegan Sun's motion for summary judgment in its entirety. Piazza objects to the magistrate judge's report arguing that summary judgment should not be granted in favor of Mohegan Sun on his negligence claim. (See Doc. 82). Piazza does not object to magistrate judge's recommendation that summary judgment should be granted on his conspiracy claim against Mohegan Sun. (See id.) For the reasons stated below, the court holds that Mohegan Sun is entitled to summary judgment on Piazza's false imprisonment, conspiracy, and negligence claims.[23]

---

[22] As stated above, the court finds that Szczecinski as a matter of law did not violate Piazza's Fourth Amendment rights. Therefore, Szczecinski is entitled to qualified immunity and it is not necessary for this court to conduct an inquiry into whether Piazza's Fourth Amendment right was clearly established. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson v. Callahan, 555 U.S. 223 (2009) (explaining the two-part inquiry for qualified immunity and stating that if plaintiff fails to make a prima facie showing that defendant committed a constitutional infraction then the court must dispose of the claim in defendant's favor and need not consider whether the constitutional right was clearly established).

[23] The magistrate judge's report did not address Piazza's false imprisonment claim. Mohegan Sun moved for summary judgment on this claim (see Doc. 45), but Piazza's brief in opposition failed to address it in any respect. Therefore, Piazza is deemed not to oppose that portion of the motion under Local Rule 7.6. ("Any party who fails to comply with this rule shall be deemed not to oppose such motion.").

1.    **Conspiracy Claim**

To prove a conspiracy under § 1983, a plaintiff must demonstrate "that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" Parkway Garage, Inc. v. City of Philadelphia, 5. F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)).  This requires the plaintiff to establish the elements of a civil conspiracy. See Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974).  A civil conspiracy involves two or more persons acting in concert to carry out an unlawful act or a lawful act by unlawful means, "the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Adams v. Teamsters Local 115, 214 Fed. Appx. 167, 174 (3d Cir. 2007) (quoting Hampton v. Hanrahan, 600 F.2d 600, 620-21 (7th Cir. 1979) (internal quotations omitted)).

A conspiracy, by definition, requires two or more persons.  In the instant case, Piazza's conspiracy claim was dismissed against all alleged co-conspirators except Mohegan Sun.  Under the intracorporate conspiracy doctrine, a conspiracy cannot arise between an entity and its agents. See Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003).  Notably, Mohegan Sun is a private corporation.  Assuming *arguendo* that a conspiracy existed between Mohegan Sun and its employees, Piazza would be unable to meet the "color of state law" requirement of § 1983. See Pugh v. Downs, 641 F. Supp. 2d. 468, 475 (E.D. Pa.

2009) ("The conspiracy must be made up of two or more state actors, or at least one state actor with a private party deemed to be a state actor." (citation omitted)).

Moreover, Piazza's § 1983 conspiracy claim against Mohegan Sun would still fail as a matter of law even if the Commonwealth defendants had not been previously dismissed.  The existence of a conspiracy can be proven through the use of both direct and circumstantial evidence, but not by mere speculation.  Adams, 214 Fed. Appx. at 172.  Piazza fails to present any evidence beyond mere speculation and conjecture that: (1) Mohegan Sun entered into an agreement with the PSP troopers to seize Piazza, and (2) Mohegan Sun intended to inflict a wrong on Piazza by depriving him of his federally protected rights.  Rather, the record demonstrates that Mohegan Sun had no control over the PSP troopers, that the troopers made their own determination to detain Piazza with no input from Mohegan Sun personnel, and that Mohegan Sun's only possible involvement in the seizure and detention was informing the PSP troopers of a "possible theft."  (Doc. 48 ¶ 43).

Piazza attempts to create an inference of a conspiracy between the PSP troopers and Mohegan Sun by arguing that the surveillance footage only showed Piazza picking up the vouchers from the ground and not physically taking the vouchers from Wallick.  This misconstrues the pertinent issue.  Under § 3924, a person can be guilty of theft by picking up lost or misplaced property and failing to take reasonable measures to return the property with intent to deprive the owner thereof.  18 PA. CON. STAT. § 3924.  As explained above, the surveillance footage

provided ample justification to believe Piazza was committing theft under

Pennsylvania law and, therefore, it was appropriate for Mohegan Sun personnel to

notify PSP.  Piazza's remaining overly-broad and conclusory allegations, such as

"the timing of the entire event," fail to show a common purpose to commit an

unlawful act between Mohegan Sun and a third party, but instead merely create a

"false issue, the demolition of which is the primary goal of summary judgment."

Lexington Ins. Co. W. Pa. Hosp., 423 F.3d 318, 333 (3d Cir. 2005).

       Moreover, Piazza's § 1983 conspiracy claim fails as a matter of law because

Szczecinski had probable cause to believe Piazza had committed theft.  Therefore,

Piazza cannot prove the § 1983 requirement of showing that he was deprived of a

federally protected right.  For these reasons, Mohegan Sun's motion for summary

judgment on Piazza's § 1983 conspiracy claim will be granted.

## 2.  **Negligence Claim**

       Under Pennsylvania law, negligence can be established by showing:

> (1) the existence of a duty or obligation recognized by law, requiring the
> actor to conform to a certain standard of conduct; (2) a failure on the part of
> the defendant to conform to that duty, or a breach thereof; (3) a causal
> connection between the defendant's breach and the resulting injury; and (4)
> actual loss or damage suffered by the complainant.

 Atcovitz v. Gulph Mills Tennis Club, Inc., 812 A.2d 1218, 1222 (Pa. 2002) (citation

omitted).  Piazza presents three theories of negligence in his motion for partial

summary judgment against Mohegan Sun: (1) negligence in the initial reporting of

the incident to the PSP; (2) negligence in failing to provide notification of a patron's

obligation to return lost vouchers; and (3) negligence in not having accounting and

internal controls in place on September 22, 2007, that dictated when the surveillance department should notify the PSP about possible criminal activity.[24] (Doc. 43, at 5-6).

Piazza objects to the magistrate judge's finding that his negligence claim fails as a matter of law. The court has conducted a *de novo* review and holds that Piazza cannot establish a viable negligence claim against Mohegan Sun. Thus, Piazza's motion for partial summary judgment will be denied and Mohegan Sun's motion for summary judgment will be granted.

### a.   <u>Negligence in the Initial Reporting</u>

Piazza cannot establish that Mohegan Sun breached a duty of care owed to him by notifying PSP of a "possible theft." <u>Marshall v. Port Auth. of Allegheny Cnty</u>, 568 A.2d 931, 935 ("Absent a breach of duty, a negligence claim cannot be sustained."). The crux of Piazza's argument is that Mohegan Sun was negligent in reporting the incident to PSP because Wallick merely reported her gaming vouchers as "lost" and the surveillance footage only shows him picking the vouchers up from the ground, not physically taking them from Wallick.[25] The property need not be physically taken from the person of another, however, to commit theft under Pennsylvania law. It is sufficient that a person takes lost or

---

[24] Piazza's complaint presents additional theories that are not discussed in Piazza's briefs. (<u>See</u> Doc. 8, Count IV). The court finds that these theories are not supported by the record and therefore fail as a matter of law.

[25] The single case cited by Piazza in support of his position, <u>Romanski v. Detroit Entertainment, L.L.C.</u>, did not involve a negligence claim and is factually distinguishable. <u>See</u> 428 F.3d 629 (6th Cir. 2005); (Doc. 63, at 13-17).

misplaced property and fails to take reasonable measures to return it with an intent to deprive the owner thereof.  See 18 PA. CON. STAT. § 3924.  The surveillance footage—showing Piazza picking up vouchers that clearly did not belong to him, failing to approach or to speak to any Mohegan Sun employees or patrons in the area about the vouchers, immediately cashing out of his slot machine, and leaving the area—provided Mohegan personnel with ample justification to report a *possible* crime.[26]  (See Doc. 33, Ex. 3).  No reasonable jury could find that Mohegan Sun was negligent in notifying PSP about the incident.

Furthermore, Mohegan Sun's report to PSP was not a discretionary act. Mohegan Sun is regulated by the Pennsylvania Gaming Control Board.  The Pennsylvania Gaming Control Board issued the Pennsylvania Gaming Control Board and Pennsylvania Police Operator Notification List ("Operator Notification List"), which specifies when Mohegan Sun and other casinos are required to notify PSP of a possible crime.  (Doc. 46, Ex. H).  Theft is a crime that requires immediate notification on the Operator Notification List. (Id.)  The deposition testimony of Mohegan Security personnel confirms that once they became aware of Piazza's

---

[26]  Piazza's contends that there is a genuine issue of material fact regarding whether he was actually going to return the vouchers to casino personnel.  Piazza's subjective intentions and actual guilt are immaterial.  The inquiry is whether Mohegan Sun acted reasonably in light of the information available to them at the time they notified PSP of a "possible theft."

possible criminal behavior, they were required to notify PSP.[27]  (Doc. 48, Ex. 8, at

13-16, 31-33; Doc. 48, Ex. 9, at 8-9).  It was PSP, not Mohegan Sun, who had

jurisdiction to investigate the matter and enforce the criminal provisions of the

Commonwealth.  See 4 PA. CON. STAT. § 1517 (2006) (subsequently amended Jan. 7,

2010).  Mohegan Sun had no duty or authority to control the actions of the PSP

troopers.  Brisbine v. Outside In Sch. of Experiential Educ., Inc., 799 A.2d 89, 93 (Pa.

Super. Ct. 2002) ("Generally, there is no duty to control the acts of a third party.").

Mohegan Sun cannot be found negligent for performing actions it was required to

take by the Pennsylvania Gaming Control Board.  Therefore, Piazza's claim that

Mohegan Sun was negligent in its initial reporting fails as a matter of law.

### b.   Negligent Patron Notification

Piazza also claims that Mohegan Sun was negligent in failing to advise

patrons through signs or on vouchers of "the obligation of a patron who finds lost or

discarded vouchers."[28]  (Doc. 43 at 6).  Piazza's claim fails as a matter of law because

he cannot establish the elements of duty or causation.

---

[27]  The magistrate judge erred by relying on Title 4, Section 1517 of the
Pennsylvania Consolidated Statutes.  (Doc. 79, at 47-48).  This provision establishes
a Bureau of Investigations and Enforcement ("BIE") within the Pennsylvania
Gaming Control Board and delegates responsibility between the BIE and the PSP.
4 PA. CON. STAT. § 1517 (2006) (subsequently amended Jan. 7, 2010).  This section is
inapplicable to casinos, which are subject instead to the regulations of the
Pennsylvania Gaming Control Board.

[28]  Piazza argues that the Mount Airy Casino in the Poconos provides proper
notice by stating on its vouchers that "[u]nder Pennsylvania Criminal Law Title 18,
all found property, including this gaming voucher, must be turned in to proper
authorities."  (Doc. 46, Ex. G).

Whether a duty exists is a question of law for the court.  R.W. v. Manzek, 888 A.3d 740, 746 (Pa. 2005).  A duty requires that a party "conform to a certain standard of conduct for the protection of others against unreasonable risks."  Id. The Pennsylvania Supreme Court has enumerated five factors to guide courts in the duty inquiry "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution."  Althaus v. Cohen, 756 A.2d 1166, 1169 (Pa. 2000).  The Pennsylvania Supreme Court has yet to decide whether a casino has a duty to notify patrons of their obligations to return lost gaming vouchers.[29]

Assuming *arguendo* that Mohegan Sun had a duty and breached it, Piazza's claim still fails as a matter of law.  Piazza failed to put forth any evidence that Mohegan Sun's alleged negligence is casually connected to his injuries.  Sharpe v. St. Luke's Hosp., 821 A.2d 1215, 1218 (Pa. 2003).  Piazza argues that he has returned property in the past and that he was going to return the gaming vouchers in this instance; he does not assert he was unaware of his obligation to return the vouchers.  (Doc. 44 ¶ 3; Doc. 82 ¶ 8 ("It was my intention, without question, to give these vouchers to [Mark, Paulie or Jen] to determine if the rightful owner was still on the property.")).  Thus, Piazza did not need notification to know that he should

---

[29]  The court predicts that the Pennsylvania Supreme Court would not impose a duty under these circumstances.  The court chooses, however, to address only the causation element.

return the vouchers.[30]  Moreover, notification would not have impacted Piazza's purported decision to return the vouchers to an employee he knew and trusted. (Doc. 33, Ex. 1, at 72, 74-75, 126-27; Doc. 44 ¶ 3).  Therefore, Piazza's claim that Mohegan Sun was negligent for failing to provide proper patron notification fails as a matter of law.

### c.   Negligent Adherence in Adopting Internal Controls

Finally, Piazza asserts that Mohegan Sun was negligent for failing to have "statutorily mandated internal controls" that dictated when Mohegan Sun security personnel would contact the PSP about observed criminal activity or violations of internal policy, controls or state regulations.  (Doc. 83, at 10, 13).  Piazza argues that Mohegan Sun has provided no evidence that internal controls were in place prior to December 14, 2007.  (See Doc. 46, Ex. I).  Piazza's claims that, had internal controls been in place, Mohegan Sun security personnel would have known not to call PSP about a simple "lost voucher" and he would not have been injured.

It is undisputed that the Pennsylvania Gaming Control Board imposed reporting obligations on Mohegan Sun as a condition of its establishment.  (Doc. 48, Ex. 8, at 13-16; Doc. 48, Ex. 9, at 8-9; Doc. 46, Ex. H).  It is unclear, however, why Mohegan Sun would be "statutorily mandated" to create internal controls dictating when it would contact the PSP about observed criminal activity.  The Operator Notification List specifically enumerated when Mohegan Sun was required to

---

[30]  Piazza also never asserts that he was unaware that it would be a crime to keep gaming vouchers that did not belong to him.  (See Doc. 44; Doc. 46, Ex. C).

contact the PSP.  (See Doc. 46, Ex. H).  Piazza has not cited the purported statute or

regulation that mandates internal controls, and the court has reviewed the

Pennsylvania Gaming Control Board's regulations and finds no authority requiring

Mohegan Sun to have such internal controls in place.  See 58 PA. CODE § 465 (listing

the accounting and internal controls that Pennsylvania casinos must have in place

prior to establishment).  Moreover, the Pennsylvania Gaming Control Board

approved Mohegan Sun's internal controls on "surveillance operating procedures"

which did not address when Mohegan Sun personnel would contact the PSP

regarding observed criminal activity.  (Doc. 46, Ex. I).  In the light of the absence of

a statutory mandate and the fact that the Operator Notification List already

enumerated the list of crimes that required immediate notification to PSP, the

court holds that Mohegan Sun had no duty to promulgate internal controls

dictating when Mohegan Sun security personnel would notify the PSP about

observed criminal activity.

　　Assuming *arguendo* that Mohegan Sun was negligent for not having internal

controls in place, Piazza has filed to put forth any evidence that the lack of internal

controls caused his purported injuries.  As explained above, this was not simply a

case of a "lost voucher."  Mohegan Sun security personnel had ample reason to

believe Piazza had committed theft under § 3924 based on the surveillance footage.

Had internal controls been in place on September 22, 2007, they would have by

definition mandated Mohegan Sun personnel notify PSP about a suspected theft as

required by the Operator Notification List.  (Doc. 46, Ex. H).  Therefore, no

reasonable jury could find that Mohegan Sun's lack of internal controls caused Piazza's injuries.  Piazza cannot establish a viable negligence claim under any theory, therefore Mohegan Sun is entitled to summary judgment on Piazza's negligence claim.[31]

## IV.   Conclusion

In his first report (Doc. 78), the magistrate judge recommended granting Szczecinski's motion to strike in part and denying it in part, denying both Piazza's and Szczecinski's motion for summary judgment on Piazza's § 1983 Fourth Amendment illegal seizure claim, and granting Szczecinski's motion for summary judgment on Piazza's § 1983 Fourth Amendment illegal search claim.  For the reasons stated above, although rejecting the magistrate judge's reasoning *in toto*, the court adopts the magistrate judge's recommendation in part and rejects it in part.

In his second report (Doc. 79), the magistrate judge recommended granting Mohegan Sun's motion to strike in part and denying it in part, denying Piazza's motion for partial summary judgment, and granting Mohegan Sun's motion for summary judgment.  For the reasons stated above, the court adopts the magistrate judge's recommendation to grant Mohegan Sun's motion for summary judgment, but rejects the magistrate judge's reasoning in its entirety.

---

[31]  The court has reviewed Piazza's remaining objections and found them to be either without merit or moot as a result of the court's independent legal analysis.

An appropriate order shall issue.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:      September 26, 2011

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD PIAZZA**, | : | **CIVIL ACTION NO. 3:09-CV-1087** |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CT COPORATION, t/d/b/a** | : | |
| **MOHEGAN SUN AT POCONO** | : | |
| **DOWNS and PENNSYLVANIA** | : | |
| **STATE POLICE DIVISION OF** | : | |
| **GAMING ENFORCEMENT,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 26th of September 2011, upon consideration of the reports of the magistrate judge (Docs. 78, 79), wherein the magistrate judge recommends that the motion to strike (Doc. 52) filed by defendant Trooper Curt A. Szczecinski ("Szczecinski") be granted in part and denied in part, the motion to strike (Doc. 60) filed by defendant CT Corporation, t/d/b/a Mohegan Sun at Pocono Downs ("Mohegan Sun") be granted in part and denied in part, and wherein the magistrate judge recommends that the motion for summary judgment (Doc. 45) filed by Mohegan Sun be granted, the motion for summary judgment (Doc. 32) filed by defendant Trooper Curt A. Szczecinski ("Szczecinski") be granted in part and denied in part, and the motion for partial summary judgment (Doc. 40) filed by plaintiff Richard Piazza ("Piazza") be denied, and upon further consideration of the objections (Docs. 80, 82) filed in response thereto, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1.    The report of the magistrate judge (Doc. 78) is ADOPTED in part and
REJECTED in part, as follows:

   a.    The report is ADOPTED with respect to its recommendation to
strike paragraphs, 2, 3, 6, 7, 8, 25, 27, 29, 34, 41, 47, 48, 53, 72, 74,
75, 82, 84, 88, 89, 90 of Piazza's statement of material facts (Doc.
44) as unsupported by a proper citation to the record.

   b.    The report is ADOPTED with respect to its recommendation to
strike paragraphs 1, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18,
19, 20, 33, 34, 35, 36, 37, 41, 42, 43, 44, 45, 46, 48, 49, 50, 51, 52, 53,
54, 57, 59, 63, 70, 71, 77, 78, 79, 80, 81, 90, and 91 of Piazza's
statement material facts (Doc. 44) and Piazza's exhibits E, F, G,
I, J, N, O (Doc. 46, Exs. E, F, G, I, J, N, O) as immaterial to
Piazza's claims against Szczecinski.

   c.    The report is ADOPTED with respect to its recommendation to
deny Piazza's motion for partial summary judgment.  (Doc. 78,
at 45).

   d.    The report is ADOPTED with respect to its recommendation to
grant Szczecinski's motion for summary judgment on Piazza's §
1983 Fourth Amendment illegal search claim.  (Doc. 78, at 45).

   e.    The report is REJECTED in all other respects.

2.    The report of the magistrate judge (Doc. 79) is ADOPTED in part and
REJECTED in part, as follows:

   a.    The report is ADOPTED with respect to its recommendation to
strike paragraphs 2, 4, 6, 7, 8, 13, 14, 25, 27, 29, 34, 40, 41, 42, 43,
47, 48, 53, and 65 of Piazza's statement of material facts (Doc. 44)
as unsupported by a proper citation to the record.

   b.    The report is ADOPTED with respect to its recommendation to
strike paragraphs 3, 6, 7, 9, 10, 11, 22, 27, 28, 29, 45, 52, 56, 58, 61,
65, and 66 of Piazza's statement of material facts (Doc. 44) and
Piazza's exhibits F & G (Doc. 46, Exs. F, G) as immaterial to
Piazza's claims against Mohegan Sun.

   c.    The report is ADOPTED with respect to its recommendation to
grant Mohegan Sun's motion for summary judgment.  (Doc. 79,
at 44)

2

    d.     The report is REJECTED in all other respects.

3.    Szczecinski's motion to strike is GRANTED in part and DENIED in part, as follows:

    a.     The motion is GRANTED with respect to striking paragraphs 2, 3, 6, 7, 8, 25, 27, 29, 34, 41, 47, 48, 53, 72, 74, 75, 82, 84, 88, 89, 90 of Piazza's statement of material facts (Doc. 44) as unsupported by proper and accurate citation to the record.

    b.     The motion is GRANTED with respect to striking paragraphs 1, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 33, 34, 35, 36, 37, 41, 42, 43, 44, 45, 46, 48, 49, 50, 51, 52, 53, 54, 57, 59, 63, 70, 71, 77, 78, 79, 80, 81, 90, 91 of Piazza's statement material facts (Doc. 44) and Piazza's exhibits E, F, G, I, J, N, O, and Y (Doc. 46, Exs. E, F, G,  I, J, N, O, Y) as immaterial.

    c.     The motion is GRANTED with respect to striking paragraphs 4 and 6-21 of Marianne Piazza's affidavit (Doc. 46, Ex. B) and paragraphs 10-13 of Richard Piazza's affidavit (Doc. 46, Ex. C) to the extent they are offered for the truth of the matter asserted, and striking paragraphs 17 and 20 of Richard Piazza's affidavit as contradicted by the record.

    d.     The motion is DENIED in all other respects

4.    Mohegan's Sun motion to strike is GRANTED in part and DENIED in part, as follows:

    a.     The motion is GRANTED with respect to striking paragraphs 2, 4, 6, 7, 8, 13, 14, 25, 27, 29, 34, 40, 41, 42, 43, 47, 48, 53, and 65 of Piazza's statement of material facts (Doc. 44) as unsupported by a proper citation to the record.

    b.     The motion is GRANTED with respect to striking paragraphs 3, 6, 7, 9, 10, 11, 22, 27, 28, 29, 45, 52, 56, 58, 61, 65, and 66 of Piazza's statement of material facts (Doc. 44) and Piazza's exhibit F, G, and Y (Doc. 46, Exs. F, G. Y) as immaterial to Piazza's claims against Mohegan Sun.

    c.     The motion is GRANTED with respect to striking paragraphs 4, and 6-21 of Marianne Piazza's Affidavit (Doc. 46, Ex. B) to the extent they are being offered for the truth of the matter asserted.

       d.     The motion is DENIED in all other respects.

5.     Piazza's motion for partial summary judgment (Doc. 40) is DENIED

6.     Szczecinski's motion for summary judgment (Doc. 32) is GRANTED.

7.     Mohegan Sun's motion for summary judgment (Doc. 45) is GRANTED

8.     The Clerk of the Court is directed to enter JUDGMENT in favor of Mohegan Sun and Szczecinski.

9.     The Clerk of Court is directed to CLOSE the case.


                            _S/ Christopher C. Conner_____
                            CHRISTOPHER C. CONNER
                            United States District Judge